# STATE OF VERMONT

# ENVIRONMENTAL COURT

Appeals of Cyril Z. Meadow     }
Institute and Phyllis Meadow   }
                               }     Docket Nos: 17-1-04 Vtec
                               }     and 35-3-04 Vtec
                               }
                               }

Decision and Order on Motions for Summary Judgment

In Docket No. 17-1-04 Vtec, Appellant-Applicants Cyril Z. Meadow Institute (CZMI) and Phyllis Meadow appealed the December 30, 2003 decision of the Zoning Board of Adjustment (ZBA) of the Town of Dummerston, denying conditional use approval. In Docket No. 35-3-04 Vtec, Appellant-Applicants appealed the January 28, 2004 decision of the Planning Commission of the Town of Dummerston, denying site plan approval for the same project. Appellant-Applicants are represented by Christopher D. Roy, Esq.; the Town of Dummerston is represented by Robert M. Fisher, Esq.; Interested Persons Ruth Allard, Bill Bassler, Joyce Bassler, Stacy Dean, Steve Glabach, Maria Glabach, Eberhard Kuschel, Gail Kuschel, Alan Lasky, Elbridge McBreairty, Rejeanne McBreairty, Paul Normandeau, Jo Jean Normadeau, James A. Olmsted, Tammy Scarfe, Chester Wendall, Bobbie Wendall, James Wilmott, Susan Wilmott, and Jon Michael Wilmott are represented by Lawrence G. Slason, Esq.; and Interested Persons Mary Lou Schmidt and William H. Schmidt represent themselves.

At the last pretrial conference we discussed a summary judgment briefing schedule that would result in the filing of a reply memorandum (by mail or by fax) so that it would be received by the Court by 9:00 a.m. on August 16, 2004, which is a state holiday; however, the Town's motion to continue the trial date has made it necessary to hold a conference on Friday, August 13, 2004. Accordingly, we are ruling on the motions at this time, to assist the parties to discuss the necessary trial preparation, without prejudice to Appellant-Applicants' right to file a final memorandum under the agreed schedule, if they wish to do so.

The Town of Dummerston and certain of the Interested Persons (Steve Glabach, Maria Glabach, Paul Normandeau, Jo Jean Normadeau, James A. Olmsted, James Wilmott, Susan Wilmott, and Jon Michael Wilmott) (hereinafter grouped together for ease of reference as "Appellees" ), have moved for summary judgment, arguing that the doctrines of res judicata and collateral estoppel and the factors enunciated in In re Stowe Club Highlands, 166 Vt. 33 (1996) and In re Carrier, 155 Vt. 152 (1990) preclude Appellant-Applicants from applying for approval of amendments to a previously-approved site plan and conditional use approval, or of any permit conditions that were previously litigated and determined on the merits. Appellant-Applicants have moved for summary judgment on the issue of whether their application for site plan review should be deemed to have been approved. The following facts are undisputed unless otherwise noted.

Dr. Phyllis Meadow owns 120 acres of land in three parcels, separated from one another by Middle Road and Tucker Reed Road, located in a Rural Residential zoning district in the Town

of Dummerston. One of the parcels is a 37.96-acre parcel located along the easterly side of Tucker Reed Road. When Dr. Phyllis Meadow and her husband, Dr. Cyril Z. Meadow, acquired the land in 1996, the land contained a residence on the west side of Tucker Reed Road and a shed and a dilapidated barn on the 37.96-acre parcel on the east side of Tucker Reed Road.

In approximately mid-1999, Dr. Phyllis Meadow established the Cyril Z. Meadow Institute (CZMI) in honor of her late husband, who had passed away in 1998. CZMI is a not-for-profit educational facility providing graduate level instruction in psychoanalysis, in connection with the Boston Graduate School of Psychoanalysis. CZMI uses the 37.96-acre portion of the property located along the easterly side of Tucker Reed Road.

In the fall of 1999, the ZBA granted conditional use approval and the Planning Commission granted site plan approval for the replacement of the old barn with a new two-level "antique" - style barn and for its use for graduate-level psychoanalytic training. The approvals contained various conditions limiting class size, days and hours of operation, parking, and lighting. The conditions included the requirement that the classes be composed of a maximum of 22 students and two faculty members and that the facility limit its hours of operation to the period from 8:45 a.m. to 5:15 p.m. The 1999 approvals were based on applications considering the 120-acre property as a whole.

In late 2001 to early 2002 Appellant-Applicants submitted an application requesting an increase in the days and hours of operation for classes, requesting the use of the facility (including an increase in the hours of operation) for summer conferences and continuing education seminars for the community, and requesting the use of the facility by other Dummerston-area non-profit organizations on a limited trial basis. Appellant-Applicants did not propose any new construction and did not request any expansion in class size or number of faculty, staff, or students. Appellant-Applicants requested that the hours of operation be extended to begin at 7:00 a.m. and run to 7:00 p.m. on class days and to 9:30 p.m. for summer conferences or ceremonies.

In its March 13, 2002, decision, the ZBA approved the increased days of operation for classes and allowed increased hours of operation from 7:00 a.m., but only to 7:00 p.m., for class days, summer conferences and continuing education seminars, and occasional ceremonies. The ZBA decision denied the requests for the facility to be used by students on a daily basis during non-class-session periods, to be used by outside non-profit organizations, to be used for continuing education seminars for the community (other than the approved summer conferences), and for any hours of operation later than 7:00 p.m.

On September 23, 2003, Appellant-Applicants submitted the present application, outlining their seven-year master plan for the facility, and requesting conditional use and site plan approval for new construction and for increased use of the facility. The application proposes to add an entrance porch roof, a handicapped accessible ramp, and an additional fire exit door to the existing barn building; to convert the existing shed[1] into a clinical studies lab facility with three consultation rooms, a foyer and a bathroom; to construct a new, separate residential building to house faculty bedrooms, student and faculty lounges, and a kitchen; to upgrade the sewer and water system; to reconfigure the existing parking spaces; and to construct a new parking lot, for a total of 40 or 41[2] spaces. The application stated that if additional library space were necessary for

accreditation, beyond that in the large classroom in the barn building, Appellant-Applicants would apply for an amendment for such space; that is, it was not part of the present application. The site plan application form does not appear to have been accompanied by an engineered site plan, although details were provided of the building porch details, sign and lighting specifications.

In connection with the construction of these expanded facilities, Appellant-Applicants also propose the increased use of the facility over the seven-year period covered by the so-called master plan application, including to increase the class size to a maximum of 45 students within the next two years and a maximum of 60 students by the end of the seven years; to change the hours of operation to run from 8:00 a.m. to 8:30 p.m. on non-class days and to 10:00 p.m. on class days; to increase the number of faculty and staff; to increase the number of classes to run for long (3- to 4-day) weekends on 24 to 28 weekends per year; to use the facility for professional education seminars six or seven times per year for 25 to 35 people; and to use the facility for up to seven other events a year, including fund-raising events and an annual conference, lasting from one to three days each, and having sessions running to 10:00 p.m.

The parties did not submit to the Court any engineered site plan related to this application; the 1999 application provided as an exhibit also only had a sketch plan attached to it, not an engineered site plan. The site plan application in the present appeal only has an attached location map, building details (labeled " Exhibit 13" , a sign design, and lighting specifications. The site plan application describes the project as "construct new entrance drive, parking, apartment/[illegible], convert shed to lab." From the Planning Commission decision, it appears that the proposal as described in the hearing differed from the plan or description originally submitted with the application, and that the Planning Commission requested Appellant-Applicants to submit an updated site plan.

The ZBA and Planning Commission held joint hearings to consider conditional use approval and site plan approval of this application on October 28 and December 2, 2003, and a site visit on November 3, 2003. The ZBA issued a decision on December 30, 2003 denying conditional use approval. The Planning Commission issued a decision on January 28, 2004 denying site plan approval, noting that " the applicants had not yet submitted a sufficiently specific site plan even though one had been requested."

Appellees argue that the Appellant-Applicants are prohibited from relitigating issues that were previously heard and determined on the merits. The doctrine of res judicata (or claim preclusion) operates to prohibit a litigant from raising a claim in a second lawsuit that has been definitely settled by a previous hearing and final judicial decision on the merits regarding the same claim and parties. Similarly, the doctrine of collateral estoppel (or issue preclusion) operates to prohibit a litigant from relitigating a factual or legal issue actually litigated and decided an earlier action, even if the second action involves different claims or differs significantly from the first action.

However, this is not a case where a party is trying to relitigate either a claim or an issue that was previously litigated and determined in an earlier action involving the same claims or issues or the same parties. First of all, no previous permit for this facility has been litigated in court at all. Moreover, the present application does not seek to reconsider the merits of an application

previously considered and decided upon by the ZBA or Planning Commission. See, e.g., In re Carrier, 155 Vt. 152 (1990) (application may be changed to respond to objections or to accept new conditions). Rather, the present application proposes new construction, and proposes new or expanded uses of the facility based upon that new construction. Regardless of the merits of the present application, it was not previously litigated or determined on its merits. Appellant-Applicants are entitled to have the present application considered on its merits de novo in the present appeals.

In any event, even if an application requests modification of conditions of earlier permits, the doctrine of collateral estoppel does not prevent an applicant from applying at a later date to modify the conditions of a permit or to modify a permitted structure or use, as long as some changed circumstances justify the new consideration. See also In re Stowe Club Highlands, 166 Vt. 33 (1996) (Act 250 application).

Appellees also argue that the conditions imposed in previous permits to protect the character of the area should not be altered unless the applicants can demonstrate that they have substantially changed the project specifically to reduce or minimize its effect on the character of the area. However, the issue before the Court in the summary judgment motion is simply whether the Court should consider the merits of the present application, not whether it should be approved or whether any of the prior permit conditions should be expanded or eliminated. Those issues will be for the hearing on the merits of the application.

Appellant-Applicants argue that their application for site plan approval submitted on September 23, 2003 should be deemed to have been approved (as of approximately November 23, 2003), due to inaction by the Planning Commission, under then-24 V.S.A. § 4407(5). The ZBA and Planning Commission held joint hearings on October 28 and December 2, 2003, and a site visit on November 3, 2003. The ZBA issued its decision on December 30, 2003. The Planning Commission issued its decision on January 28, 2004, within 60 days of the last hearing date but not within 60 days of the filing of the application.

The deemed approval language of the statute was " intended to remedy indecision and protracted deliberations on the part of local boards and to eliminate deliberate or negligent inaction by public officials." In re McEwing Services, LLC, 2004 VT 53, ¶ 21; In re Fish, 150 Vt. 462, 464 (1988). There have been no " protracted deliberations" in the present case; rather, the hearings were adjourned once, and the decision made promptly after the close of the hearings. Most importantly, the hearings were continued expecting that Appellant-Applicants would submit a revised and sufficiently specific site plan, as well as to accommodate Appellant-Applicants" attorney's schedule.

Appellant-Applicants do not contest that they did not submit a revised site plan to the Planning Commission at any time before it issued its written decision. Thus, even without regard to the reasons for continuing the hearing (or whether it was continued to accommodate Appellant-Applicants), the " deemed-approval" period did not start to run because the site plan application was not complete. That is, the site plan for which approval was sought had not yet been provided to the Planning Commission; whatever initial site plan may have been filed some time in September was either not sufficiently specific or did not represent the revisions being sought to

the project. Even if the deemed-approval period is measured from the final date of hearing at which the revised site plan was presumably explained orally to the Planning Commission, the January 28, 2004 decision was within the required 60-day period.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellees' Motion for Summary Judgment is DENIED, as Appellant-Applicants are entitled to consideration of the present application on its merits; and Appellant-Applicants" Motion for Partial Summary Judgment is DENIED.

Please be prepared to discuss the Town's motion to continue at the telephone conference to be held later this morning. While the hearing on the merits remains scheduled for September 7 and 8, 2004, at the Brattleboro Town Hall, until or unless changed due to the discussion at that conference, please be prepared to discuss the parties' and witnesses' availability for September 28 and 29, 2004, as those dates may become available at the courthouse in Newfane. Also please be prepared to discuss October 19, 28 and 29.

Done at Barre, Vermont, this 13th day of August, 2004.

_____

Merideth Wright

Environmental Judge

---

Footnotes

[1.]    This conversion also requires a front setback variance, which was requested in the application.

[2.]    The application refers to 40 spaces, but the ZBA decision refers to 41.