# STATE OF VERMONT

# ENVIRONMENTAL COURT

Appeal of Glenn and Elouise      }
Martin                           }
                                 }      Docket No. 54-4-03 Vtec
                                 }
                                 }

Decision and Order

Appellants Glenn and Elouise Martin appealed from a decision of the Development Review Board (DRB) of the Town of Jericho, denying their application for conditional use approval for single-family dwellings on Lots 7, 16 and 19 of their commercial subdivision. Appellants are represented by Vincent A. Paradis, Esq.; and the Town is represented by Gregg H. Wilson, Esq. Interested persons Robert W. Abbey and John R. Burke entered their appearances on their own behalf.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. A site visit was taken by Judge Wright alone, by agreement of the parties. The parties were given the opportunity to submit written memoranda and requests for findings. Upon consideration of the evidence as illustrated by the site visit, and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

Appellants own Lots 7, 16 and 19 of the Jericho East Subdivision. The Jericho East Subdivision was developed by Appellants in two stages: 63 single residential family lots in 1984, all located to the south of Vermont Route 15, and 32 commercial lots (the "originally-commercial lots" ) in 1987. All of the originally-residential lots have been sold, and are improved with a single-family residence on each lot.

The originally-commercial lots consist of twelve lots to the north of Route 15 and Lots 1 through 20 to the south of Route 15 (as shown on Appellant's Exhibit 3), all located in what is now the Commercial zoning district[1] of the Town of Jericho. The Commercial zoning district in this location extends along both sides of Route 15. Both to the south and to the west of the property at issue in this appeal, the Commercial district adjoins the Village zoning district, not the Rural Residential district. The originally-commercial lots to the north of Route 15 are not at issue in this appeal; they include uses for a horse barn, a mini-storage facility, and an excavating business.

Lots 7, 16 and 19 are three of the twenty originally-commercial lots located to the south of Route 15. Appellants have marketed all twenty of these lots for sale as commercial lots since their approval in 1987, but have only sold three as commercial lots: Lot 1, fronting on Route 15, which remains undeveloped; Lot 3, which was developed as a automotive repair business; and Lot 5, which was developed as a veterinary clinic. In 1993, Appellants obtained approval of originally-commercial Lots 8, 10, 11, 12, 13, 14 and 15 for the construction of single-family residences, all of which have been constructed and sold.

In 1999, Appellants applied for conditional use approval for the construction of single-family residences on all but two of the originally-commercial lots to the south of Route 15. Lots 2 and 20 front on Route 15 and were not within the scope of the 1999 application covering Lots 6, 7, 9, 16, 17, 18 and 19, all seven of which remained vacant and undeveloped at the time. The then-ZBA granted conditional use approval for the single-family residential use of four of those lots (Lots 6, 9, 17 and 18), but denied approval for the single-family residential use of the three lots (Lots 7, 16 and 19) that are the subject of the present application. The April 1999 ZBA decision stated no reasons for the denial of residential use of Lots 7, 16 or 19. That decision was not appealed and

became final; however, it did not by its terms preclude reapplication at a later date should circumstances change.

In October of 1999, a two-bedroom residential apartment was approved to be added within the building on Lot 3 (the automotive repair business). In February of 2000, a one-bedroom residential apartment was approved to be added within the building on Lot 5 (the veterinary clinic). Both of these residential uses are associated with the commercial use on the lot: the owner of the automotive repair business lives in that residential apartment, and an employee of the veterinary clinic lives in that residential apartment and provides coverage at the clinic for emergencies out of normal working hours. Both apartments were incorporated in the existing buildings so that both buildings continue to have an appearance compatible with the surrounding residences.

In January of 2003, Appellants filed the present application for conditional use approval of single-family residential uses on Lots 7, 16 and 19. This application includes a proposal for a hedge extending the length of the boundary between Lot 16 and Lot 3 that does not appear to have been proposed in 1999 (at least it is not mentioned in the 1999 decision). The DRB denied the 2003 application, referring to the prior denial in 1999, on the basis that there had been " no change in zoning which would allow for reopening" the April 1999 decision, and that the project " would not be in general harmony with the surrounding commercial uses and would detract from abutting properties as per section 301.4.3.2(b) and 301.4.3.4(a)" of the Zoning Regulations.

Successive Application

As we stated on summary judgment, a successive application for the same approval for the same property is generally precluded by 24 V.S.A. § 4472 (exclusivity and finality of judgment), unless there has been a substantial change in conditions or other intervening considerations between the initial denial and the second request. Appellants were entitled to present evidence showing whether anything pertinent has changed since the 1999 denial.

An applicant is entitled to make a successive application to one that has been denied if it is either different in its content (especially if the new or amended content is directed at addressing or correcting the reasons for denial) or if some change in external circumstances has occurred in the intervening time, such as a material change in the applicable law or regulations, or a substantial change in the character of an area or the traffic patterns on a roadway, or a substantially new technology or scientific knowledge about the consequences of a proposal. See, e.g., In Re: Application of Carrier, 155 Vt. 152, 158 (1990); Appeal of Wesco, Inc., Docket No. 39-3-03 Vtec (Vt. Envtl. Ct., November 29, 2004).

In the present case, we cannot analyze the reasons for the 1999 denial for these three lots, because no reasons were given. While the application for conditional use approval of single family residences on Lots 7, 16 and 19 is for the same proposed use as that denied by the ZBA in 1999, there have been several changes to the surrounding neighborhood since this time which, taken together, allow the DRB or this Court in the de novo appeal to consider the merits of the successive application, as the effect of the proposal on the character of the area is required to be assessed for conditional use approval.

Although Appellants emphasize that they have been unsuccessful in selling these particular lots for solely commercial uses, the failure of these lots to sell for solely-commercial uses is not as important as are the changes in the surrounding neighborhood, and in the proposal, since 1999. That is, the lots' placement in a cul-de-sac and lack of visibility from Route 15 that may make them less-suitable as retail or roadway commercial-type uses has not changed since the subdivision was laid out, and has not changed since 1999. The important changes for the purpose of determining whether a successive application may be considered are the addition of

residential apartments to the existing commercial uses at the automotive repair business on Lot 3 and at the veterinary clinic on Lot 5, together with the development of single-family residences on three of the lots approved in 1999 for residential use, and the proposal for screening between Lot 3 and Lot 16. Since 1999 the neighborhood in which these lots are located has become a neighborhood of mixed residential and commercial uses, with residential uses predominating. Appellants are entitled to have their application for Lots 7, 16, and 19 considered on its merits.

Merits of Application

The only conditional use standards at issue in this appeal relate to the effect of the proposal on the character of the area and the adjoining uses. Unlike in many cases in which residential landowners are concerned about commercial encroachment on an originally-residential area, the present case poses the opposite problem of an originally-commercially-zoned neighborhood becoming a mixed residential and commercial neighborhood, in which the owners are concerned that existing commercial uses will become incompatible as the neighborhood becomes more predominantly residential. The parties do not dispute that construction of single-family houses on these lots would result in the generation of less traffic and noise (at least during business hours) due to the lots themselves than would be generated by many types of solely-commercial uses on those lots.

In connection with this concern, the Town and the unrepresented parties have referred to the purpose of the Commercial zoning district. That district is intended to " provide employment opportunities and commercial goods and services in a manner having the least impact on the rural character of the Town." § 202.7. In contrast to the purpose statements for the adjacent Village zoning district (§ 202.6) and also for the Village Center (§ 202.8) zoning district, the Commercial district does not appear to have been designed specifically to encourage mixed residential and commercial or community services uses. Rather, it appears to have been aimed at separating industrial and commercial uses from areas of town retaining a ' rural character.' In any event, as listed in § 301.6 for this district, many residential uses, including single-family residences and accessory apartments, are allowed in the Commercial district as conditional uses, if they meet the conditional use standards. Thus, residential uses are not per se incompatible with the purposes of that district; and none of the existing residential or mixed residential and commercial, or commercial uses on the originally-commercial lots are nonconforming uses in the district.

The neighborhood at issue in this appeal, located to the south of Route 15 and having access by South Main Street through the originally-commercial subdivision to Kriste Lane in the originally-residential subdivision, is a now a mixed commercial and residential area within the Commercial zoning district. Other than the remaining vacant lots (Lots 1, 2, 20, and 17), it contains single-family residences, and two mixed commercial and residential uses.

Lot 7 is adjacent to three single-family residences and to Lot 5 which contains the veterinary clinic and its residential apartment. Lot 19 is adjacent to three single-family residences, to Lot 17 (approved for a single-family residence), and to Lot 5 as well, and is directly across the street from the parking area for the commercial automotive repair business on Lot 3. Lot 16 is adjacent to a single-family residence, to Lot 17 (approved for a single-family residence), to the vacant commercial Lot 1, and to Lot 3 which contains the automotive repair business and its residential apartment. The proposal includes a continuous arborvitae hedge or screen of trees to be planted on the border between Lot 16 and Lot 3 to screen the proposed residential use from the existing commercial use on Lot 3.

Appellants propose that covenant language be placed in the deeds of conveyance for Lots 7, 16 and 19, advising any buyer that the zoning district is commercial and that adjacent properties may be used for commercial[2] uses. Appellants propose that the design of the single-family residences proposed for these lots will be similar in style and design to the existing single-family residences

located adjacent to these lots in the Jericho East subdivision. Construction of single family houses on these lots would result in less traffic, noise and activity than would be associated with a commercial use of the property.

However, while single-family residential uses of these three lots may be compatible with the surrounding single-family residences (both the originally-residential lots and the originally-commercial lots that have been converted) and with the outward appearance of the mixed commercial and residential buildings, the proposed solely-residential use of all three lots must be analyzed as well in connection with whether the area's commercial uses would be adversely affected. That is, we must analyze the viability of the area to continue as a mixed-use commercial and residential neighborhood.

The conversion of all three of these lots to solely-residential use would detract from the use of the abutting properties now in commercial use, and would adversely affect the mixed-use character of the whole area affected. Therefore, the application for conversion of all three of these lots to solely-residential uses must be denied.

However, as zoning is in derogation of the common law, we note that a landowner-applicant is entitled to approval of as much of a proposal as is consistent with the applicable constraints of the particular town's regulations and plan. In the present case, under the regulations now before the Court, it appears that Lots 7, 16 and 19 may be eligible for approval of commercial uses having associated residential apartments, similar to the uses now in existence on Lots 3 and 5. Moreover, due to its location to the east of the veterinary clinic, farther from the automotive repair use, it is possible that Lot 7 could also qualify for the type of mixed residential and home business use in which the residential use would predominate, such as a tax preparation business or a sewing business or a clock-repair business. However, such proposals are not before the Court in this application. We mention them only to make clear that such subsequent applications for these various types of mixed commercial and residential uses would not be barred by the denial in this decision.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that

Appellants' application for solely-residential use of Lots 7, 16 and 19 must be denied, and that any application for mixed residential and commercial uses, such as those discussed in the decision, must first be made to the DRB before it could be ruled on by this Court. This denial is specifically without prejudice to Appellants' future application for mixed uses on these three lots.

Done at Barre, Vermont, this 15th day of December , 2004.

_____
Merideth Wright
Environmental Judge

**Footnotes.**

1. In 1987 it appears to have been called a "Commercial/Light Industrial" zoning district.

2. Such a covenant would also have to make clear that any of the originally-commercial lots now in residential use could potentially be converted to mixed residential and commercial uses, as well as to wholly commercial uses, upon approval under the zoning regulations.