STATE OF VERMONT

| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 135-9-14 Vtec |
|---|---|
| Southerly Side of US Route 7 LLC | DECISION ON MOTION |

Applicant Southerly Side of U.S. Route 7, LLC ("Applicant") seeks approval of Phase IIIB of an 88-unit planned unit development (the Project) in the Town of Milton, Vermont. Phases I, II, and IIIA of the Project have been approved and constructed, with 50 of the proposed 88 units completed. The current matter involves Applicant's Phase III permit amendment application, proposing to split Phase IIIB into two phases; the amended Phase IIIB will include construction of 30 units, with the remaining eight units to be completed in Phase IIIC. The permit amendment application also requests a waiver from Section 592.11 of the Town of Milton Zoning Regulations. The Town of Milton Development Review Board ("DRB") denied the permit amendment application on August 14, 2014, and Applicant appealed to this Court.

Now before the Court is the Town's motion for summary judgment, arguing that because the unappealed Phase III permit includes the condition that Applicant must provide a secondary road access to the Project before any additional units will be approved, and because Applicant's permit amendment request fails to address this condition, the current application is barred by the successive application doctrine. In response, Applicant argues that its application is a permissible permit amendment because the prior permit condition is inapplicable and thus has no preclusive effect, and, to the extent a prior preclusive decision exists, the application is permissible because it offers a substantial change over the previous approved permit.

1

**Factual Background**

For the purpose of putting the pending motion into context, the Court recites the following facts, which it understands to be undisputed unless otherwise noted:[1]

1.    In June 2008, Applicant submitted an application for a planned unit development (PUD) off Route 7 South in Milton, Vermont.  The Project area consists of 18.56 acres and is shaped like a long rectangle with one of the two short sides paralleling the southern side of Route 7.

2.    The Project was proposed to be completed in three phases.

3.    Phase I, closest to Route 7, was approved by the DRB in June of 2008.  Phase I includes several commercial buildings and 157 parking spaces.  Phase I was later amended in 2009 and 2010 to include two residential units above one of the commercial buildings.

4.    Phase II of the Project, southwest and adjacent to the Phase I area, includes 34 residential townhome units, and was approved on September 24, 2009.

5.    In 2010, Applicant submitted an application for final site plan approval of Phase III of the Project (Phase III Application), the area farthest from Route 7.  The Phase III application proposed an additional 52 residential units.

6.    The only public access to the Project from Route 7 is provided by a private right-of-way, Southerberry Drive.  The Phase III Application proposed extending the private right-of-way and adding a road within the Project area to provide access to the Phase III units.  With the extension, the private right-of-way would exceed 1,000 feet.

7.    At the time Applicant submitted its Phase III Application, Section 592.7 of the Town of Milton Zoning Regulations ("Regulations") stated:

> The maximum length of the PRIVATE RIGHT-OF-WAY for any residential subdivision shall be one thousand (1000) linear feet in its entirety; this requirement may be waived by the Development Review Board if it is determined that the roadway proposed can provide safe access for emergency

---

[1] We note that Applicant, the non-moving party, did not respond to the Town's statement of undisputed facts, but rather filed its own statement of "disputed" facts.  See Appellant's Statement of Disputed Facts, filed on Nov. 30, 2015.  The Town responded to Appellant's Statement with an additional filing on Dec. 18, 2015, in which the Town specifically disputed many of Appellant's factual representations.  While it may have been clearer for Applicant to have directly responded to the Town's statement of undisputed facts, the facts we rely on here are understood to be undisputed based on both parties' filings.

vehicles. This length shall be measured from the intersection with a PUBLIC RIGHT-OF-WAY.

8.    Section 592.11 provided:

A PRIVATE RIGHT-OF-WAY serving more than . . . 50 dwelling units must have a LOOPED ROAD (roads having more than one separate connection to an existing PUBLIC RIGHT-OF-WAY). This requirement may be waived by the Development Review Board if it is determined that the roadway proposed can provide safe access for emergency vehicles and efficient layout of utilities.

9.    In its Phase III Application, Applicant requested waivers from Section 592.7 and 592.11 of the Regulations.

10.    The DRB conducted a warned public hearing on September 23, 2010, and continued the hearing to October 28, 2010.

11.    The DRB issued a decision on December 9, 2010 (2010 Decision) (submitted as Town Ex. A), granting final site plan approval for Phase III of the Project, but denying Applicant's request for waivers of Sections 592.7 and 592.11 of the Regulations.

12.    In Conclusion 25 of the 2010 Decision, the DRB found:

[T]he proposed roadway cannot provide safe access for the residents of Phase Three, because there is not a secondary access to a public road. Therefore, the DRB denies the requested waivers from Section 592.7 and 592.11 of the Zoning Regulations. No zoning permits shall be issued for Phase Three until such time that a secondary access can be provided to a public road.

Town Ex. A at 5.

13.    In Condition 6 of the 2010 Decision, the DRB held:

The DRB denies the requested waivers from Section 592.7 and 592.11 of the Zoning Regulations. No zoning permits shall be issued for Phase Three until such time that a secondary access that loops back out to a public road can be provided. At such time that a secondary access can be provided to a public road, then the waivers will no longer be necessary and zoning permits for the project may be issued.

Town Ex. A at 10.

14.    Soon after the DRB issued its 2010 Decision, Applicant submitted revised plans and requested the DRB to reconsider its denial of the requested waivers and Condition 6. Applicant's revised plans included a twenty-foot-wide paved emergency access connecting Phase I and Phase II, but did not provide a secondary access to a public road.

3

15. The DRB issued a decision on Applicant's request to reconsider on February 24, 2011 (2011 Decision) (submitted as Town Ex. D), denying the request to reconsider and finding the revised plans did not satisfy Condition 6.

16. In its 2011 Decision, the DRB again held "that a secondary access to a public road must be provided for Phase Three." Town Ex. D at 5.

17. Applicant did not appeal either the 2010 or 2011 Decisions.

18. In 2012, Applicant submitted Amendment IX, which proposed adding an emergency access to the Project through the properties to the east of the Project.

19. On June 28, 2012, the DRB issued its denial of Amendment IX (June 2012 Decision) (submitted as Town Ex. E), finding the revisions insufficient to address its concerns about a secondary access which, it clarified, meant a second publicly accessible access to U.S. Route 7.

20. Later in 2012, Applicant submitted Amendment X, proposing to include an emergency access road from Route 7 through property to the west of the Project.

21. In a decision issued on December 13, 2012 (December 2012 Decision) (submitted as Town Ex. F), the DRB denied Amendment X, stating in Conclusion 22,

> "[T]he Applicant's current proposal does not address the DRB's concerns raised during the preliminary/final approval of Southerberry Phase III, the reconsideration hearing, and Amendment IX. In the Conclusions section of the preliminary/final decision and the reconsideration, the term "secondary access" is often used. DRB [sic] again finds that the use of the term "secondary access" means a second, publicly accessible access to a public road. This would mean a second public or private road would need to be established to connect Phase III to US Route 7."

Town Ex. F at 5.

22. In 2013, Applicant submitted Amendment XII, proposing to split Phase III into two additional phases, with 14 units to be constructed in Phase IIIA, and then the remaining 38 units in Phase IIIB.

23. In a July 25, 2013 decision (the 2013 Decision) (submitted as Town Ex. G), the DRB approved Amendment XII finding: "By only constructing 14 of the 52 approved residential townhomes in Phase IIIA, the Applicant no longer needs a waiver from Section 592.11 because Southerberry Drive will not be serving greater than 50 dwelling units." Town Ex. G at 4.

4

24. Phase IIIA did require a waiver from Section 592.7 because the private right of way serving Phase IIIA would be greater than 1,000 feet. The DRB granted Applicant a waiver of Section 592.7.

25. In Condition 4 of the DRB's 2013 Decision, the DRB held that Section 592.11 (requiring a second access for development over 50 units) must be met before Phase IIIB would be approved, stating, "The DRB grants a waiver from Section 592.7 of the Zoning Regulations for Phase IIIA. The Applicant will need to meet the requirements of 592.11 of the Zoning Regulations before zoning permits for residential units in Phase IIIB shall be issued." Town Ex. G at 6.

26. In 2014, Applicant filed its thirteenth application to amend the final plan and site plan approval for Phase III of the Project (Amendment XIII). Amendment XIII proposes to split Phase IIIB into two additional phases—Phase IIIB and Phase IIIC. In Phase IIIB, Applicant will construct 30 residential townhomes, bringing the total number of homes to 80. The remaining eight units will be completed in Phase IIIC. Applicant represents that the final phase, Phase IIIC, will only be built once a second connection to U.S. Route 7 is made.

27. In its Amendment XIII application, Applicant again requested a waiver from Section 592.11 of the Regulations.

28. On August 14, 2014, the DRB denied the amendment application (2014 Decision) (submitted as Town Ex. J) finding, "there is no new proposal or evidence included in this application to alleviate [the DRB's] past concerns and the associated risk to public safety," and there "is not a substantive difference with [Amendment XIII] and previous applications." Town Ex. J at 6.

29. Applicant appealed the 2014 Decision, filing a notice of appeal with this Court on September 10, 2014.

## Discussion

We begin our analysis by noting that a trial court may grant summary judgment to a moving party only if that party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2). We will "accept as true the [factual] allegations made in opposition to the

5

motion for summary judgment, so long as they are supported by affidavits or other evidentiary material," and we will give the non-moving party the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356.

The Town argues that the DRB's 2010 Decision and subsequent decisions on the various permit amendment applications, which went unappealed, prohibit the development of any more units in Phase III of the PUD until Applicant provides a second connection to a public road. The Town further argues that, because the current application (Amendment XIII) fails to address the issue of a secondary access and fails to offer a substantial change from those permit amendment applications previously found inadequate by the DRB, it is barred by the successive application doctrine. In opposition, Applicant argues that 1) the current application has been substantially changed to address the concerns of the DRB; 2) the conditions imposed by the DRB in its prior decisions do not apply to the current proposal; and 3) that the proposal complies with the Regulations and thus the DRB's condition about a secondary access is unnecessary.

The facts here squarely present the legal issue of whether Applicant is barred from challenging the DRB's 2014 Decision because of the preclusive effect of the prior un-appealed decisions.

A municipal land use panel's decision, and any permit conditions imposed, is final and binding on all parties involved if it is not appealed. See 24 V.S.A. § 4472(d); In re Application of Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 54. As Section 4472(d) provides:

> Upon the failure of any interested person to appeal to an appropriate municipal panel under section 4465 of this title, or to appeal to the Environmental Division under section 4471 of this title, all interested persons affected shall be bound by that decision or act of that officer, the provisions, or the decisions of the panel, as the case may be, and shall not thereafter contest, either directly or indirectly, the decision or act, provision, or decision of the panel in any proceeding, including any proceeding brought to enforce this chapter.

Section 4472(d) thus insulates a municipal panel from collateral attack on any unappealed decision or act of that panel and "defines collateral attack to include both direct and indirect challenges." Lathrop, 2015 VT 49, ¶ 54. Therefore, permit conditions or conditions

6

of approval may be challenged on appeal, but cannot be collaterally attacked in a later proceeding.

Recognizing the need for some degree of flexibility in the land use context, Vermont courts have adopted the successive application doctrine. This doctrine provides that a municipal panel "'may not entertain a second application concerning the same property after a previous application has been denied, unless a substantial change of conditions had occurred or other considerations materially affecting the merits' of the request have intervened between the first and second application." In re Carrier, 155 Vt. 152, 158 (1990) (quoting Silsby v. Allen's Blueberry Freezer, Inc., 501 A.2d 1290, 1295 (Me. 1985)). The successive application doctrine also applies where a permit was granted but where conditions were imposed or where requirements must be met before development can proceed. Lathrop, 2015 VT 49, ¶¶ 63–64. In either case—permit denial or approval—a second application can be reviewed "when the application has been substantially changed so as to respond to objections raised in the original application or when the applicant is willing to comply with conditions the commission or court is empowered to impose." Id. ¶ 58 (citing In re Carrier, 155 Vt. at 158). The doctrine thus creates an exception to the otherwise rigid preclusive effect of Section 4472(d) "to allow local boards the ability to respond to changing circumstances that often arise in zoning decisions." Lathrop, 2015 VT 49, ¶ 58.

Under the successive application doctrine, where there is a preexisting permit, and the applicant submits a new application or requests an amendment to an existing permit, our first step is to determine whether there is a judgment with preclusive effect. Id. ¶ 66. If there is such a judgment, we review the proposal as a whole and determine whether the proposal offers a substantial change from the permitted project. Id. Where there is a substantial change proposed, review should proceed as if there is no prior permit. Id. If there is no substantial change proposed, the new application is prohibited unless it meets the three criteria for amending a municipal permit set forth In re Hildebrand, 2007 VT 5, ¶ 11, 181 Vt. 568 (applying Act 250 permit amendment factors established In re Stowe Club Highlands, 166 Vt. 33, 38 (1996) to municipal zoning context). These criteria are: 1) whether there have been changes in factual or regulatory circumstances beyond the control of the applicant; 2) whether there have

7

been unforeseeable changes in the construction or operation of the project; and 3) whether there have been changes in technology since the conditions were imposed. See In re Hildebrand, 2007 VT 5, ¶ 12.

Turning to the facts here, Applicant has requested an amendment to the DRB's 2010 Decision granting final plan and site plan approval for Phase III of the Project. Applicant's Phase III Application proposed 52 additional units, for a total of 88 dwelling units for the entire Project. In its 2010 Decision, the DRB approved the final site plan for Phase III, but denied Applicant's request for waivers of Section 592.11 and Section 592.7 of the Zoning Regulations. In Conclusion 25 of its decision, the DRB held that "[n]o zoning permits shall be issued for Phase Three until such a time that a secondary access that loops back out to a public road can be provided." Ex. A at 5. In Condition 6 of its approval in the same decision, the DRB reiterated that "[n]o zoning permits shall be issued for Phase Three until such time that a secondary access that loops back out to a public road can be provided. At such time that a secondary access can be provided to a public road, then the waivers will no longer be necessary and zoning permits for the project may be issued." Id. at 10. Applicant did not appeal this decision and is therefore prohibited from challenging these final permit conditions in a subsequent application. See 24 V.S.A. § 4472(d).

Applicant now challenges the scope of the DRB's 2010 Decision and Condition 6, claiming that the decision only applies to the full 88 units, but not to a lesser number, and it therefore has no preclusive effect for an application proposing less than 88 units. This argument ignores the substance and context of the DRB's 2010 Decision. The DRB's decision was specifically addressing the request for a waiver from Section 592.11, which provides: "A PRIVATE RIGHT-OF-WAY serving more than 30 lots or 50 dwelling units must have a LOOPED ROAD." Id. (emphasis in original). While at the time of the 2010 Decision, Applicant was proposing a total of 88 units, the DRB's holding addressed the fact that only one point of ingress and egress was provided for all units of Phase III, not just the 88th unit. The DRB was not, as Applicant suggests, merely concerned with the total number of units; rather, the condition was intended to enforce Section 592.11's prohibition on having more than 50 units be served by only one access point.

8

What is more, even if Condition 6 of the 2010 Decision did not make it clear that a secondary access was necessary before any units above the 50 permitted by Section 592.11 could be approved; the DRB's subsequent decisions resolve any ambiguity. Most recently, in its 2013 Decision, the DRB granted Applicant's proposal to split Phase III into two phases—Phase IIIA and IIIB. Phase IIIA proposed 14 additional units, bringing the total number of units at the Project to 50, leaving the remaining 38 units to be constructed during Phase IIIB. In approving Phase IIIA, the DRB explained that "the Applicant no longer needs a waiver from Section 592.11 because Southerberry Drive will not be serving greater than 50 dwelling units." Town Ex. G at 4. The DRB explicitly conditioned its approval with Condition 4, stating that, "Applicant will need to meet the requirements of Section 592.11 of the Zoning Regulations before zoning permits for residential units in Phase IIIB shall be issued." Id. We find no ambiguity in the DRB's 2013 Decision; the DRB's concern was not the total number of units, but whether there would be more than 50 units served by a single access point. Moreover, the DRB's decision makes it entirely clear that before any additional units for Phase III may be approved or constructed, a second access is necessary.

Despite this express and clear holding in the 2013 Decision, Applicant also argues that Section 592.11 does not prohibit more than 50 units if there is only one access point so long as the roadway can provide safe access for emergency vehicles. More specifically, Applicant contends that it need not meet the conditions imposed in the DRB's prior permit decisions because with the 30 additional units, Southerberry Drive can provide safe access for emergency vehicles. While the Regulations do permit the DRB to grant a waiver from Section 592.11's requirement of a second access point, the DRB has repeatedly concluded that without a second access point the roadway cannot provide safe access. See Town Ex. A at 5 ("[T]he proposed roadway cannot provide safe access for the residents of Phase Three, because there is not a secondary access to a public road."); Ex. D at 4 ("The DRB finds a secondary access to a public road is necessary to provide safe access to the Phase Three units."). Applicant failed to challenge this repeated conclusion via a timely appeal of the DRB's 2010 or 2013 Decisions and thus Applicant is precluded from collaterally attacking it here.

9

We therefore conclude that the 2010 Decision, and the subsequent DRB decisions addressing Condition 6 and the need for a second access to the Project, establishes the clear and binding condition that before any units above the 50 already approved will receive zoning permits, Applicant must provide a second, publicly accessible access road connecting Phase III of the Project to U.S. Route 7.

Finding that there is a decision with preclusive effect, we turn to the question of whether Applicant proposes a substantial change over the previous approved permit. Here, Applicant is proposing to split Phase IIIB (38 units total) into two additional phases. In the new Phase IIIB, Applicant proposes to construct 30 units, bringing the total to 80 units. After completion of Phase IIIB, Applicant claims it will install a secondary access. At that point, Applicant will complete Phase IIIC, constructing the remaining 8 units. Applicant argues that because the DRB allowed Applicant to amend the Project based on a change in the number of units in 2013 (Amendment XII), the DRB necessarily decided that "changing the number of units proposed is a substantial change." Applicant's Resp. at 3, filed on Nov. 30, 2015. Therefore, Applicant contends, since Amendment XIII (the current amendment) changes the number of units to be built without a loop road from 88 to 80, it also proposes a substantial change, and thus the prior decisions do not bar the current application.

Applicant's argument stretches the bounds of reasonableness. That Applicant altered the number of units it proposed in Amendment XII was not the operative fact; rather, it was that Phase IIIA only proposed an additional 14 units, bringing the total number of units to 50. As a result, no waiver of Section 592.11 was required, since the jurisdiction trigger of more than 50 dwelling units was not met. The DRB's decision made this reasoning explicit, stating, "By only constructing 14 of the 52 approved residential townhomes in Phase IIIA, the Applicant no longer needs a waiver from Section 592.11 because Southerberry Drive will not be serving greater than 50 dwelling units." Town Ex. G at 4. There is nothing in the 2013 Decision suggesting that any alteration in the number of units amounts to a substantial change. Moreover, in Condition 4 of the 2013 Decision, the DRB explicitly conditioned its approval on the requirement that Applicant provide a second access point before zoning permits would be granted for any additional units—i.e., for any unit above the 50 total units contemplated by

10

Applicant in its Amendment XII application, which is the maximum allowed by Section 592.11. See Town Ex. G at 6.  Applicant did not appeal this condition and therefore any subsequent amendment must address Condition 4 of the 2013 Decision.

Rather than address the DRB's requirement that a secondary access is necessary, the only relevant proposed change here is the minor reduction in the number of units—38 to 30—to be constructed in Phase IIIB, with the remaining eight units to be built in Phase IIIC.  We fail to see how merely altering the total number of units from 88 to 80 (the total with proposed Phase IIIB) offers a substantial change when the proposal does nothing to address the DRB's requirement that a secondary access must be built before any additional units will be approved. Our conclusion here is reinforced by the fact that Applicant still intends to construct a total of 88 dwelling units; it simply split its proposal into two sub-phases, with thirty units in the first sub-phase (now referred to as Phase IIIB) and the second sub-phase (Phase IIIC) calling for the construction of the remaining eight units.  As a result, the current application is only permitted if it can meet the requirements for a permit amendment under Hildebrand, 2007 VT 5, ¶¶ 11, 12.

Here, none of the three factors weigh in favor of granting a permit amendment.  There is no offer of changes in the factual or regulatory circumstances beyond those entirely foreseeable at the time Applicant sought final site plan approval in 2010.  Likewise, there have been no unforeseeable changes in construction or operation of the Project.  See Lathrop, 2015 VT 49, ¶ 73.  Lastly, there is no evidence that technology has changed over the past several years that would alleviate the need for a second access point.  Therefore, Applicant has failed to establish grounds warranting a permit amendment.

### Conclusion

For the foregoing reasons, we conclude that Applicant's current permit amendment application fails to address the unappealed and binding condition that Applicant must provide a secondary access before any additional zoning permits will be issued for Phase III.  Further, Applicant has failed to establish that the requested permit amendment is permissible under applicable statutes and caselaw precedent.  Therefore, we conclude that Applicant's current

permit amendment application is barred by the successive application doctrine.  We therefore **GRANT** the Town's motion for summary judgment and dismiss the application.

As a consequence of this Decision and Judgment Order, we hereby **AFFIRM** the August 14, 2014, denial of Applicant Southerly Side of US Route 7, LLC's permit amendment application by the Town of Milton Development Review Board.

A Judgment Order accompanies this Decision.  This concludes the current proceedings before this Court.

Electronically signed on May 27, 2016 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division