2009 VT 44



In re McGrew (2006-264), in re 114 College Street
Permit Application (2008-023)

 

2009 VT 44

 

[Filed 01-May-2009]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions, Vermont Supreme Court, 109 State Street, Montpelier, Vermont05609-0801 of any errors in order
that corrections may be made before this opinion goes to press.

 

 


 2009 VT 44 
 
  


 Nos. 2006-264 & 2008-023
 
  


 In re Appeal of Barbara McGrew,
 Daniel Fivel, 
 Jowall Limited Partnership and Leonora, LLC
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
 In re Appeal of 114
 College Street Permit
 Application     
 
 
 Environmental Court
 
 
  
 
 
  
 
 
  
 
 
 September Term, 2008
 
 
  
 
 
  
 
 
  
 Merideth Wright, J.
 
 
  
 
 Norman Williams and Ross A. Feldmann of Gravel and Shea,
Burlington, for Appellants

  McGrew, Fivel and Jowall Limited Partnership, and
Robert C. Roesler of Doremus,

  Roesler & Kantor, Burlington, for Appellant
Leonora, LLC.

 

Christina A. Jensen of Lisman, Webster & Leckerling,
P.C., Burlington, for Appellee Investors

  Corporation of Vermont.

 

 

PRESENT:  Reiber, C.J., Johnson, Skoglund and Burgess,
JJ., and Davenport, Supr. J., 

           
        Specially Assigned

 

 

¶ 1.            
REIBER, C.J.   In these consolidated appeals we review
the Environmental Court’s conditional approval of a proposed ten-story mixed
use building to be constructed on the corner of Pine and College Streets in the
City of Burlington.  We conclude that the court erred in granting a second
application that was not substantially changed from the first, and therefore
reverse.

¶ 2.            
The somewhat lengthy procedural background to this appeal may be
summarized as follows.  In February 2004, applicant Investors Corporation
of Vermont filed a zoning application with the City’s development review board
(Board) for a ten-story mixed-use building to be located at 114 College
Street.  The proposal included fifty residential units (twelve to be
reserved for low- or moderate-income households) and three commercial units,
including a drive-through ATM.  The project called for construction of a
three-level parking structure beneath the new building with room for sixty-four
parking spaces, fourteen to be used for public and commercial parking and fifty
to be reserved for residents.  To accommodate the sizable 83,000
square-foot structure, applicant proposed combining allowable densities from
its two adjacent lots at 126 College Street and 95 St. Paul Street that already
contained two smaller commercial buildings and a parking structure.  


¶ 3.            
The City’s zoning ordinance required that the project provide two spaces
for each of the fifty residential units, for a total of 100 spaces.  Under
§ 10.1.19 of the ordinance, however, the parking requirement may be reduced by
up to fifty percent “to the extent that the applicant can demonstrate that the
regulation is unnecessarily stringent for reasons of: (a) Unique use times; (b)
Shared or dual use; (c) Availability and projected use of alternate
transportation modes  .  .  . ; and/or (d) Anticipated reduction
in vehicle ownership in connection with affordable housing developments.” 
Applicant sought and obtained the full fifty-percent waiver from the Board, and
overall approval for the project.  Several neighbors who had opposed the
project then appealed to the Environmental Court, raising a variety of claims
relating to the project’s use of “borrow[ed] unused density” from neighboring
lots; entitlement to various height and density “bonuses” under the ordinance;
conformance with maximum height limits; the design of the proposed parking
garage; and compliance with the regulatory criteria for a parking waiver. 
   

¶ 4.            
Parking remained a core issue at trial.  Applicant’s entitlement to
the full fifty-percent waiver, a key element of the proposal, was predicated
largely on three elements: a showing of reduced vehicle-ownership patterns in
the downtown area, the availability of public transit, and shared-use parking
in the adjacent parking structure at 126 College Street.  Neighbors had
contested the issue before the Board, and their appeal to the Environmental
Court questioned whether “the Project meet[s] the requirements for a parking
waiver under Section 10.1.19.”  In a motion for summary judgment,
neighbors asserted that applicant had failed to adduce any specific evidence to
support their request for the full fifty-percent waiver.   Applicants
countered that they had specifically satisfied the shared-use criterion,
claiming that “commercial and public parking are predominantly daytime uses,
whereas residential parking is a predominantly evening use” and that “adjoining
parking for over one hundred commercial lease spaces are not used” in the
adjoining College Street parking structure in the evenings.  The trial
court ultimately denied the motion, finding with respect to the parking-waiver
issue that material facts remained in dispute “as to the usage patterns for the
existing buildings, the usage patterns of the parking provided in the existing
buildings, and the usage characteristics of affordable residential
units.”  

¶ 5.            
The parties’ dispute over the sufficiency of applicant’s evidence in
support of the fifty-percent waiver and the shared-use element continued
unabated at trial.  At the close of applicant’s case-in-chief, neighbors
moved for judgment as a matter of law, asserting that—apart from the conclusory
testimony of applicant’s parking expert that the project’s proximity to bus
lines would mitigate the need for parking—applicant had adduced no evidence
entitling it to any or all of the fifty-percent waiver.  Although the
trial court denied the motion on the ground that applicant had presented “some
evidence, however limited, in support of its position that the proposal meets §
10.1.19” it cautioned that applicant had “not present[ed] evidence on the
characteristics of parking demanded by affordable housing units, or the
projected use of alternate transportation modes by residents of downtown
housing units, or whether any of the other parking available in the area is
effectively available to the project due to unique use times or shared
use.”  The court thus ruled that the final decision on whether applicant’s
evidence was “sufficient for approval of the extent of [the] parking waiver
that it seeks” would “have to await the close of all the evidence, including
any rebuttal evidence.”  No substantial additional  evidence on
shared-use parking in the adjacent parking structure was forthcoming.

¶ 6.            
In their proposed findings and conclusions, the parties restated their
respective positions on the parking-waiver issue; applicant proposed that it
had demonstrated that the parking regulation is unnecessarily stringent for
reasons of shared or dual use and the availability and projected use of
alternate transportation modes, while neighbors submitted that applicant had
failed to meet its burden of showing that it was entitled to the waiver on
these or other grounds.   In its final decision, the court found that
applicant had “not demonstrated that the requested waiver of all fifty of the
parking spaces required for the residential use is warranted[;] although
evidence may exist to support such a waiver, it was not presented to the
Court.”  More specifically, the court found that applicant had not adduced
adequate evidence on the likely use of public transit and had “presented no
evidence to support the shared or dual use of any of the parking spaces, either
in the proposed garage or in the existing garage.”  The court did find,
however, that evidence relating to vehicle ownership patterns in the downtown
area of Burlington indicated an ownership level of 1.4 rather than the presumed
2 vehicles per unit, which entitled applicant to a waiver of thirty parking
spaces.

¶ 7.            
The court thereupon granted a waiver of thirty of the fifty spaces
requested “without prejudice” to applicant’s submitting a new application to
the Board for either a waiver of the remaining twenty spaces or a proposal to
create additional parking spaces.  “Any such waiver request,” the court
went on, “would have to be supported by appropriate evidence regarding the
projected use of alternate transportation, the shared or dual use of any of the
available spaces in either the existing or the proposed garages,  . 
.  . or any proposed vehicle limitation covenants or restrictions.” 
A final judgment order was entered, and  the case was
closed.    

¶ 8.            
Neighbors thereupon appealed the decision to this Court and applicant,
as authorized by the trial court, submitted an “amendment” to the Board seeking
to obtain the balance of the fifty-space waiver that it had originally applied
for.  Applicant’s submission to the Board explained that, in response to
the Environmental Court’s ruling, it was “request[ing] an additional 20 vehicle
parking waiver from the [Board] based on the following information.” 
Applicant then stated that it would provide parking on a fee-paying basis for
up to fifty spaces in the adjacent College Street parking garage to be
available for use between 5:30 p.m. and 7:00 a.m. plus weekends and
holidays.  Each purchaser would be provided with a “wand” programmed to
allow entry during these hours so as not to conflict with commercial
tenants.  In addition, applicant stated that it would add a provision to
the Declaration and Bylaws of the residents’ association limiting the allowable
number of vehicles per unit.  Applicant included several citations to
studies of shared-use parking purporting to demonstrate its feasibility.      

¶ 9.            
The Board issued its decision in August 2006.  In a candid
statement accompanying the decision, the Board explained that it had “struggled
with the unusual procedural circumstances presented by this application.” As
the Board observed, it “was essentially being asked by the Environmental Court
to reconsider on remand the parking waiver issue where the Board had previously
issued positive findings on an essentially identical
parking waiver request.”  (Emphasis added). 
Although uncertain whether it was therefore being asked by the court to
re-evaluate the issue under “some higher standard” of proof, the Board went on
to reaffirm its earlier decision that applicant was entitled to the requested
waiver under the shared-use criterion, and granted the application.  The
Environmental Court affirmed, rejecting neighbors’ claim (raised in a pre-trial
motion) that the shared-use issue was res judicata and finding that applicant
had changed the proposal to provide for parking-management practices and a
parking covenant.  Neighbors then filed this second appeal, which we have
consolidated with the first for purposes of review.     

¶ 10.        
Although the two appeals together raise a number claims, we address the
parking issue first because it is dispositive.  Neighbors contend that
applicant was barred from relitigating the shared-use parking issue once it had
fully and fairly, if unsuccessfully, litigated the issue in the first
proceeding.  The governing principles are well settled.  As we have
explained, “[a]lthough res judicata does not apply to administrative
proceedings as an inflexible rule of law, the principles of res judicata and
collateral estoppel generally apply in zoning cases as in other areas of
law.”  In re Carrier, 155 Vt. 152, 157-58, 582 A.2d 110, 113 (1990)
(citation omitted).  Under the so-called “successive-application”
doctrine, the general rule is that a zoning board or planning commission may
not entertain a second application concerning the same property after a
previous application has been considered “unless a substantial change of conditions
ha[s] occurred or other considerations materially affecting the merits of the
request have intervened between the fist and second application.”  Id.
at 158, 582 A.2d at 113 (quotation omitted); accord In re Jolley Assocs.,
2006 VT 132, ¶ 12, 181 Vt. 190, 915 A.2d 282; see generally 4 E. Ziegler,
Rathkopf’s The Law of Zoning and Planning § 68:3, at 68-7 (4th ed. 2005)
(“Absent any material change in plans or conditions, a board cannot change its
mind on a subsequent application for substantially the same relief.  Its
prior decision is res judicata of the merits of the later application.”). 
Under this rule we have held that a local planning agency or court may consider
a second application which has been substantially changed to respond to
objections to the first.  In re Carrier, 155 Vt. at 158, 582 A.2d
at 113.    

¶ 11.        
As we recently explained, the successive-application doctrine represents
“an attempt to balance the competing concerns of flexibility and finality in
zoning decisions.”  In re Dunkin Donuts S.P. Approval, 2008 VT 139,
¶ 9, ___ Vt. ___, ___ A.2d ___ (mem.).   Flexibility is required
because “zoning decisions must be responsive to changing circumstances” while
the interest in finality must be equally served to protect property owners from
the “harassment” of repetitive applications.  Id. (quotations
omitted); see 3 E. Ziegler, supra, § 39:13, at  39-17 (explaining
that rules prohibiting successive applications serve “to prevent unnecessary
waste of the local legislature’s time, repetitive stirring up of public
sentiment, and unfair burdens on .  .  .  opponents which
successive applications regarding the same property will produce”). 

¶ 12.        
Although the trial court here concluded otherwise, we are in essential
agreement  with the Board that it was confronted in the amended
application with “an essentially identical parking waiver request.”
 (Emphasis added).  The initial application sought a parking waiver
based in part on shared-use of the adjacent commercial parking garage during
the evening and early morning hours.  The issue was fully litigated, and
the court concluded that the evidence failed to show that the plan was
feasible.  As the court itself acknowledged, the purported remand was
designed solely to allow applicant to submit additional “appropriate evidence”
on this exact same issue.    

¶ 13.        
Furthermore, as applicant’s expert readily acknowledged, the evidence
adduced in the second proceeding—consisting of a more specific plan to offer
and enforce shared-use parking on a fee-paying basis in the adjacent commercial
parking structure—was just as available in the first proceeding. 
Relitigation of an issue with additional evidence that was previously available,
as occurred here, is precisely what res judicata and collateral estoppel are
 intended to prevent.  See generally 18 J. Moore, et al., Moore’s
Federal Practice § 132.02[2][d], at 132-25 to 132-26 (2009) (“A party may be
precluded from relitigating an issue if evidence supporting the party’s
position on the issue could have been submitted in previous litigation but, for
whatever reason, was not properly raised.”).  Characterizing the
additional evidence as effecting a material change in the application, as
applicant here suggests and the trial court found, is unpersuasive.
 Applicant’s original proposal sought to satisfy the parking-waiver
requirement in part through shared use of the adjacent commercial parking
structure, and its amended proposal sought to satisfy the parking-waiver
requirement in part through shared use of the adjacent commercial parking
structure.  The proposed solutions to the parking problem were
identical.  The submission of additional evidence addressing its
workability does not change the theoretical solution of using shared day and
nighttime parking to make spaces available.  

¶ 14.        
Nor does requiring the submission of such evidence in the first instance
place unreasonable constraints on zoning applicants or the planning process;
rather, by encouraging applicants to be thorough in their initial applications
it serves the interests of economy and finality by preserving judicial
resources and protecting adjoining landowners from repetitive litigation. 
See Northwestern Lehigh Sch. Dist. v. Commonwealth, 578 A.2d 614, 615-16
(Pa. Commw. Ct. 1990) (where the first application to condemn property was
denied for lack of evidence demonstrating absence of “reasonable alternative,”
a second application based on a new “study of alternative sites” did not
represent a material change, and the “failure to present evidence which could
have been presented in the earlier proceeding was not a basis for an exception
to the doctrine of res judicata”).        

¶ 15.        
While a trial court may certainly choose to keep a proceeding open for
some limited period of time to allow the submission of additional evidence,
that is not what occurred here.  Instead, as noted, the trial court
conditionally approved the project “without prejudice” to applicant’s
reapplying for the parking waiver, entered judgment, and declared the case
closed.     As we explained in In re Jolley Assocs.,
2006 VT 132, ¶ 12, an Environmental Court ruling that purports to be “without
prejudice” represents “no more than an expression of the successive application
doctrine and confers no greater right to reapply than is allowed by that
doctrine.”  The trial court here concluded that the evidence failed to
support applicant’s request for a shared-use parking waiver.  That issue
having been decided against applicant, the court violated the
successive-application doctrine in relitigating the issue absent any material
change in circumstances apart from the submission of supporting evidence which
could have been adduced in the first proceeding.  Accordingly, we conclude
that the judgment granting the second application must be reversed.  Our
conclusion renders it unnecessary to address neighbors’ remaining claims on
appeal.*

           
Reversed.      


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Chief
 Justice
 
  











* Applicant remains
free to submit a new and materially different application that attempts to meet
the parking requirements by, for example, reducing the number of proposed
residential units, increasing the size of the proposed parking garage, or some
other proposal.  Given the uncertainty of the ultimate outcome of the process,
however, we see no clear necessity to address the remaining issues raised by
neighbors on appeal, and therefore decline to do so.