# In re Application of Bernard and Suzanne Carrier

[582 A.2d 110]

No. 88-351

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed July 27, 1990

Motion for Reargument Denied September 7, 1990

*Rexford & Kilmartin,* Newport, for Appellants.

*Robert P. Davison, Jr.* and *Todd C. Hartsuff* of *Robert P. Davison, Jr., P.C.,* Stowe, for Appellees.

**Gibson, J.** Richard and Daniel Scott and Bluffside Farms appeal a superior court order granting site plan approval to Bernard and Suzanne Carrier for a nine-lot residential subdivision of a 10.5-acre parcel of land bordering Lake Memphremagog. We affirm.

I.

In July of 1985, shortly after purchasing the 10.5-acre parcel, the Carriers petitioned the Newport Planning Commission for site plan approval for a nine-lot residential subdivision of the land, which is zoned "general residential" but also located within a "shoreland control" district. The Commission granted its approval for lots 1–6, but withheld action on lots 7–9 until the applicants could present an amended permit showing permanent access to those lots. Abutting property owners Bluffside Farms and its owners, the Scotts (hereinafter, collectively, Bluffside Farms), appealed the site plan approval for lots 1–6 to Orleans Superior Court. Three months later, the Commission denied the application for lots 7–9, and the Carriers appealed that decision to superior court. At the same time, the Carriers (1) crossclaimed against the City of Newport, contending that the City had acquired title to Bigelow's Bluff Road—a road adjoining the proposed lots—by dedication and acceptance, and (2) counterclaimed against Bluffside Farms, asserting that Bluffside had no interest in the road since it was a public road and its recent conveyance to Bluffside had been fraudulent and without consideration.

In March of 1986 in a de novo hearing following consolidation of the appeals, the Orleans Superior Court denied the site plan application and dismissed with prejudice all the claims of the parties. The court found, among other things, that (1) the Carriers had not submitted a survey of the property showing the features that existed before excavation and landscaping of the site began; (2) Bigelow's Bluff Road was a public road, but was only twelve to seventeen feet wide and was not designed to provide safe access to the Carrier development; and (3) since Bigelow's Bluff Road was a public road, there was no need to determine whether an interest in the road had been conveyed to Bluffside Farms. The court concluded that the site plan application failed to comply with the Newport Zoning Regulations; specifically, the court stated that the proposed subdivision was not harmonious with existing adjacent uses and did not provide for maximum traffic safety and circulation between the site and the street network.

The Carriers then filed a motion to amend, asking the court to find that Bigelow's Bluff Road is a Newport City street by virtue of dedication and acceptance. The court denied that motion and a subsequent motion for reconsideration, pointing out that the motion to amend was not timely filed and that V.R.C.P. 60 was inapplicable. The court also noted that the use of a road by the public does not, by itself, show acceptance.

In May of 1986, the Carriers made a second attempt at gaining site plan approval. The Planning Commission denied this application, and the Carriers again appealed to the superior court. Bluffside Farms moved to dismiss the appeal, claiming that the second application was not sufficiently different from the first and thus was barred by res judicata. The court denied this motion. Moreover, in response to a Carrier motion, the court determined that the finding in the first appeal that Bigelow's Bluff Road was a public road had not been essential to that judgment and thus was not conclusive for purposes of the second appeal.

On October 26, 1987, the court denied the Carriers' second appeal, insofar as the proposed development did not comply with Newport Zoning Regulation § 352(2) and (3), which requires that the Commission consider "maximum safety of vehicular circulation between the site and the street network" and "adequacy of circulation, parking and loading facilities with particular attention to safety." Although the court found that the "interior road and Bigelow's Bluff Road are functionally inadequate to accommodate the flow of traffic that would arise from the development," it also found that Bigelow's Bluff Road had been dedicated to the public and accepted by the City of Newport, and, therefore, was a public road as required by § 502 of the Newport Zoning Regulations. The court found that the road had been dedicated to public use since the early part of the 20th century, and that city maintenance of the road constituted acceptance.

After several motions from both sides, the court granted the Carriers' motion for a partial retrial. On April 11, 1988, following an evidentiary hearing, the court amended certain findings and conclusions and granted site plan approval based on the fact that the proposed improvements to Bigelow's Bluff Road satisfied § 352(2) and (3) of the Newport Zoning Regulations.

The court denied Bluffside Farms' motion for a new trial, and the present appeal followed.

On appeal, Bluffside Farms argues that (1) the court's order from the first litigation, which dismissed all claims of the parties with prejudice, was res judicata concerning the status of Bigelow's Bluff Road; (2) the court was required to deny the Carriers' second site plan application because res judicata and collateral estoppel precluded the court from reconsidering the lack of a survey of preexisting conditions, the forbidden use of stumps for fill, the unsafe condition of Bigelow's Bluff Road, and the lack of a harmonious relationship between proposed uses and existing adjacent uses; and (3) the court, while acting as the Newport Planning Commission in the second litigation, exceeded its subject matter jurisdiction and acted without necessary parties in determining title to Bigelow's Bluff Road.

## II.

Bluffside Farms first argues that the dismissal of the Carriers' counterclaim and crossclaim in the first litigation constituted a final determination that Bigelow's Bluff Road is not a public road in satisfaction of § 502 of the Newport Zoning Regulations. We disagree.

Under state law, municipal zoning regulations must require development projects to front on or have access to public roads or waters. 24 V.S.A. § 4406(2). Accordingly, § 502 of the Newport Zoning Regulations provides as follows:

> No land development may be permitted on lots which do not either have frontage on a public road or public waters or, with the approval of the Planning Commission, access to such a road or waters by a permanent easement or right-of-way at least twenty feet in width.

In the first litigation, the court stated in several findings that Bigelow's Bluff Road was a public road, noting that the City had maintained it since 1949. In its last finding, it stated,

> Bluffside Farms . . . claim[s] that a quit-claim [deed] by Rudolph Bigelow on July 6, 1985, conveyed the road to them. However, Bigelow's Bluff Road is a public road. There is no need for the court to make a determination

whether the conveyance from Rudolph Bigelow to the Scotts conveyed an interest in the road to the Scotts.

The court nevertheless rejected the Carriers' application and dismissed the claims of the parties, concluding that the site plan failed to meet the Newport Zoning Regulations' objectives of traffic safety and harmony with existing uses.

In no way can this order be construed as a determination that Bigelow's Bluff Road is not a public road as required by § 502. To the contrary, the court's findings clearly state that the road is a public road for purposes of site plan approval, and that the court did not need to adjudicate a claimed conveyance of the road. At best, Bluffside Farms could argue that the court's findings regarding the status of the road were unessential to its judgment that the Carriers' application did not satisfy other related, but distinct, sections of the zoning regulations; in such a case, collateral estoppel would not bar further litigation of the issue. See *Turner v. Bragg*, 117 Vt. 9, 11–12, 83 A.2d 511, 513 (1951). In either case, however, Bluffside Farms' contention that the first appeal resolved the issue of whether Bigelow's Bluff Road was a public road in its favor is untenable. Moreover, the court's denials of the Carriers' motions following the first appeal were based on the procedural inadequacy of the motions; therefore, the court's statements regarding the dedication and acceptance of Bigelow's Bluff Road were dicta, and did not preclude further consideration of that issue.

### III.

Next, Bluffside Farms contends that res judicata and collateral estoppel barred the court in the second litigation from reconsidering the following findings and conclusions made by the court in the first litigation: (1) the proposed development was not in harmony with existing adjacent uses; (2) Bigelow's Bluff Road did not provide safe vehicular access to the proposed development; (3) the Carriers unlawfully used tree stumps for fill; and (4) the Carriers had failed to provide a survey of the preexisting conditions of the land before they began development. We do not agree that the court could not reconsider these matters.

Although res judicata does not apply to administrative proceedings as an inflexible rule of law, see, e.g., *Klein v. Colo-*

*nial Pipeline Co.*, 55 Md. App. 324, 339, 462 A.2d 546, 555 (1983), the principles of res judicata and collateral estoppel generally apply in zoning cases as in other areas of the law. *Kollock v. Sussex County Board of Adjustment*, 526 A.2d 569, 572 (Del. Super. Ct. 1987). Thus, as a general rule, a zoning board or planning commission "may not entertain a second application concerning the same property after a previous application has been denied, unless a substantial change of conditions had occurred or other considerations materially affecting the merits" of the request have intervened between the first and second application. *Silsby v. Allen's Blueberry Freezer, Inc.*, 501 A.2d 1290, 1295 (Me. 1985). This rule, which provides some finality to zoning determinations and protects the integrity of the process, *Driscoll v. Gheewalla*, 441 A.2d 1023, 1027 (Me. 1982), has been applied consistently to zoning variances and special exceptions, and we believe it is equally applicable to planning commission proceedings. See *Dellinger v. Hagest*, 157 Ind. App. 158, 165, 299 N.E.2d 222, 226 (1973); *Silsby*, 501 A.2d at 1295.

■ Accordingly, a planning commission (or a court acting as a planning commission) may grant a second application for site plan approval when the application has been substantially changed so as to respond to objections raised in the original application or when the applicant is willing to comply with conditions the commission or court is empowered to impose. Cf. *In re Crescent Beach Ass'n*, 126 Vt. 140, 141, 224 A.2d 915, 916 (1966) (successive applications to operate private beach must be different in content and show changed circumstances); *Rocchi v. Zoning Board of Appeals*, 157 Conn. 106, 111, 248 A.2d 922, 925 (1968) (relocation of access road to city landfill and addition of buffer zone created substantial changes in second application for special exception); *Driscoll*, 441 A.2d at 1028 (modified proposal for zoning variance filed less than one month after first application contained significant changes in setbacks and building dimensions, and therefore was not barred by ordinance requiring six-month delay between successive applications).

■ ■ The burden of proof of changed circumstances rests with the applicant. *Boutwell v. Town of Fair Haven*, 148 Vt. 8, 11, 527 A.2d 225, 226 (1987); *Kollock*, 526 A.2d at 572. Although we prefer that the court specifically find changed circumstances

before considering a second application, we will not require such an explicit finding if the court's findings implicitly indicate that the modified proposal is sufficiently changed to satisfy concerns that prevented approval of the prior application, and the findings are supported by credible evidence. See *Crescent Beach*, 126 Vt. at 141, 224 A.2d at 916; *Driscoll*, 441 A.2d at 1028. But cf. *Kollock*, 526 A.2d at 574 (zoning board should not have made a decision on the merits until it had determined that change in applicant's proposal was substantial enough to remove bar of res judicata).

■ In the instant case, the court denied the first application for site plan approval because the proposal was not harmonious with existing adjacent uses and the road did not provide safe access to the development. Bluffside Farms notes that the second application, like the first, was for a nine-lot residential subdivision, and claims that the applications are virtually the same. The Carriers, however, point out that the applications differ substantially in that (1) the interior road network was redesigned; (2) the lots were reconfigured; (3) extensive landscaping, screening, and plantings were proposed; (4) accesses to Bigelow's Bluff Road were reduced in number and were realigned to improve traffic safety and circulation; and (5) the internal-road-system turnaround was redesigned to make it safer for school buses and service vehicles.

The court eventually approved the second site-plan application based on the new landscaping proposals and road-improvement plan. The court was satisfied that the new proposals met the site-plan review objectives requiring that the proposed development be in harmony with existing adjacent uses and offer safe vehicular access to, and circulation throughout, the development. Upon review of the record, we conclude that the court's ruling was not erroneous. See *In re McDonald's Corp.*, 151 Vt. 346, 349, 560 A.2d 362, 364 (1989) (Supreme Court will uphold superior court's ruling in zoning case absent clear error).

Regarding the burying of tree stumps and the lack of a survey of preexisting conditions, the court in the first litigation found that in June, July and August of 1985 the Carriers divided their parcel into nine lots, engaged in excavation and landfilling on all of the lots, and buried stumps for landfill on

lots 4, 5 and 7 without filing for a landfill permit. The court also found that the Carriers were given permission to grade lots 1–6 and remove cottages therefrom, but lots 7–9 were excluded from the approval. According to the court's findings, permission for a landfill was given on August 8, 1985. In addition, the court found that the survey the Carriers had submitted did not show features existing prior to any development. The court, however, did not deny site plan approval based on the absence of such a survey or the burial of tree stumps; rather, it refused to approve the site plan because of traffic circulation and safety problems and the fact that the proposed project was not harmonious with existing adjacent uses.

In the second litigation, the planning commission did not object to the survey provided by the Carriers, but it conditioned approval, among other things, on the removal of tree stumps from the vicinity of lot 7. On appeal, the court found that the Carriers had submitted a survey of the property showing features existing as of May 20, 1986—the date of the second application. Despite Bluffside Farms' protests to the contrary, the court also found that stumps buried on lots 4, 5 and 7 were not under proposed interior roads or residences.

The essence of Bluffside Farms' complaint regarding the stumps and the survey is that the Carriers engaged in land development prior to obtaining the proper permits and, therefore, site plan approval must be denied. Although we agree the findings indicate that the Carriers developed at least some portions of their property in violation of the Newport Zoning Regulations, we do not agree that site plan approval must be denied as a result of these violations.

No land development—including division of parcels, excavation, landfill, or change in the use of land—may take place within a zoned area without a proper zoning permit. See 24 V.S.A. §§ 4303(3), 4441, and 4443(a)(1); Newport Zoning Regulations § 320. Further, no zoning permit shall be issued, except for one- or two-family dwellings, until the planning commission grants site plan approval. Newport Zoning Regulations § 350. In addition, the applicant must submit site plan maps that include a "[s]urvey of the property showing existing features." *Id.* § 351(2). Thus, pursuant to the Newport Zoning Regulations, the survey should show features existing before new de-

velopment began, since land development on a subdivision may not commence until site plan approval has been given. Although the findings of the courts in the two Carrier applications are somewhat ambiguous as to when development took place and what permits were given at what time, it is clear that some unlawful development took place, at least on lots 7–9, before the site plan was approved.

Violations of the Newport Zoning Regulations "shall be regulated as prescribed in Sections 4444 and 4445 of the [Vermont Planning and Development] Act." Newport Zoning Regulations § 330. Under the enabling act, 24 V.S.A. § 4444 prescribes penalties for violations of a zoning regulation, and § 4445 authorizes the administrative officer to institute an appropriate action to abate an unlawful use.

█ Although we deplore the precipitate, unlawful development of land, and note the duty of the administrative officer and planning commission to prevent such development, see *Wright v. Preseault*, 131 Vt. 403, 410, 306 A.2d 673, 678 (1973), the failure of the Carriers to obtain the proper permits in a timely manner is not before us here. Cf. *In re Poole*, 136 Vt. 242, 247, 388 A.2d 422, 425 (1978) (in reviewing zoning board's grant of zoning permit, trial court's deferral to planning commission to enforce ordinance and to condition or waive zoning regulations was improper). Unlike *Poole*, we are not reviewing the issuance of a zoning permit; rather, we are reviewing the superior court's decision to grant site plan approval. Bluffside Farms' arguments regarding the burial of stumps and the lack of a proper survey address the issue of prior, unpermitted development; neither the planning commission nor the court was obligated to reject the site plan on those bases. Cf. *Klein v. Colonial Pipeline Co.*, 55 Md. App. at 338, 462 A.2d at 554 (refusal to grant conditional use permit based on applicants' violation of prior permit improperly transformed zoning application proceedings into an enforcement process).

## IV.

█ Next, Bluffside Farms argues that the court in the second litigation exceeded its subject matter jurisdiction when it

determined that Bigelow's Bluff Road was a public highway dedicated and accepted by the City of Newport. We disagree.

As noted, state law and the Newport Zoning Regulations prohibit land development on lots that do not front a public road (or waters) or access such a road by a permanent easement at least twenty feet in width. 24 V.S.A. § 4406(2); Newport Zoning Regulations § 502. Therefore, before deciding whether to grant site plan approval, the planning commission, and the court on de novo review, see 24 V.S.A. § 4472(a), must determine whether the lots of a proposed subdivision front a public road.

This is precisely what the court did. In the first litigation, the court found that the City had maintained Bigelow's Bluff Road since 1949 by grading the road, filling potholes, plowing the road in the winter, placing a "dead end" road sign at the entry of the road, and providing fire truck and school bus service. In the second litigation, upon finding that for decades the public had used the road and that the City had maintained the road, the court concluded that

> the road is a public highway for purposes of § 502 and as such is a "street" within the definition of § 103. Consequently, lots 1, 8 and 9 of the proposed development have frontage on a public road and lots 1–7 have access by permanent right-of-way over an interior road which is 20′ wide. Thus, § 502 of the regulations is satisfied.

The court did not order condemnation of any property; it merely declared Bigelow's Bluff Road to be a public road "for purposes of § 502," a threshold requirement for obtaining site plan approval. The court's action was perfectly proper. See *Vermont Division of State Buildings v. Town of Castleton Board of Adjustment*, 138 Vt. 250, 255–56, 415 A.2d 188, 192 (1980) (in de novo appeal from decision by board of adjustment, court can grant declaratory and injunctive relief; "court may grant such relief as is otherwise within its jurisdiction and consistent with law and equity"); see also *In re Gadhue*, 149 Vt. 322, 325–26, 544 A.2d 1151, 1153 (1987) (reinforces *Castleton*). Further, for purposes of this proceeding, all parties necessary for the court's declaration concerning the road were present.

*Affirmed.*