2009 VT 44

# In re Appeal of Barbara McGrew, Daniel Fivel, Jowall Limited Partnership and Leonora, LLC

## In re Appeal of 114 College Street Permit Application

[974 A.2d 619]

Nos. 06-264 & 08-023

Present: Reiber, C.J., Johnson, Skoglund and Burgess, JJ., and Davenport, Supr. J., Specially Assigned

Opinion Filed May 1, 2009

*Norman Williams* and *Ross A. Feldmann* of *Gravel and Shea,* Burlington, for Appellants McGrew, Fivel and Jowall Limited Partnership, and *Robert C. Roesler* of *Doremus, Roesler & Kantor,* Burlington, for Appellant Leonora, LLC.

*Christina ,A. Jensen* of *Lisman, Webster & Leckerling, P.C.,* Burlington, for Appellee Investors Corporation of Vermont.

¶ 1. **Reiber, C.J.** In these consolidated appeals we review the Environmental Court's conditional approval of a proposed ten-story mixed use building to be constructed on the corner of Pine and College Streets in the City of Burlington. We conclude that the court erred in granting a second application that was not substantially changed from the first, and therefore reverse.

¶ 2. The somewhat lengthy procedural background to this appeal may be summarized as follows. In February 2004, applicant Investors Corporation of Vermont filed a zoning application with the City's development review board (Board) for a ten-story mixed-use building to be located at 114 College Street. The proposal included fifty residential units (twelve to be reserved for low- or moderate-income households) and three commercial units, including a drive-through ATM. The project called for construction of a three-level parking structure beneath the new building with room for sixty-four parking spaces, fourteen to be used for public and commercial parking and fifty to be reserved for residents. To accommodate the sizable 83,000 square-foot structure, applicant

proposed combining allowable densities from its two adjacent lots at 126 College Street and 95 St. Paul Street that already contained two smaller commercial buildings and a parking structure.

¶ 3. The City's zoning ordinance required that the project provide two spaces for each of the fifty residential units, for a total of 100 spaces. Under § 10.1.19 of the ordinance, however, the parking requirement may be reduced by up to fifty percent "to the extent that the applicant can demonstrate that the regulation is unnecessarily stringent for reasons of: (a) Unique use times; (b) Shared or dual use; (c) Availability and projected use of alternate transportation modes . . . ; and/or (d) Anticipated reduction in vehicle ownership in connection with affordable housing developments." Applicant sought and obtained the full fifty-percent waiver from the Board, and overall approval for the project. Several neighbors who had opposed the project then appealed to the Environmental Court, raising a variety of claims relating to the project's use of "borrow[ed] unused density" from neighboring lots; entitlement to various height and density "bonuses" under the ordinance; conformance with maximum height limits; the design of the proposed parking garage; and compliance with the regulatory criteria for a parking waiver.

¶ 4. Parking remained a core issue at trial. Applicant's entitlement to the full fifty-percent waiver, a key element of the proposal, was predicated largely on three elements: a showing of reduced vehicle-ownership patterns in the downtown area, the availability of public transit, and shared-use parking in the adjacent parking structure at 126 College Street. Neighbors had contested the issue before the Board, and their appeal to the Environmental Court questioned whether "the Project meet[s] the requirements for a parking waiver under Section 10.1.19." In a motion for summary judgment, neighbors asserted that applicant had failed to adduce any specific evidence to support its request for the full fifty-percent waiver. Applicant countered that it had specifically satisfied the shared-use criterion, claiming that "commercial and public parking are predominantly daytime uses, whereas residential parking is a predominantly evening use" and that "adjoining parking for over one hundred commercial lease spaces are not used" in the adjoining College Street parking structure in the evenings. The trial court ultimately denied the motion, finding with respect to the parking-waiver issue that

material facts remained in dispute "as to the usage patterns for the existing buildings, the usage patterns of the parking provided in the existing buildings, and the usage characteristics of affordable residential units."

¶ 5. The parties' dispute over the sufficiency of applicant's evidence in support of the fifty-percent waiver and the shared-use element continued unabated at trial. At the close of applicant's case-in-chief, neighbors moved for judgment as a matter of law, asserting that — apart from the conclusory testimony of applicant's parking expert that the project's proximity to bus lines would mitigate the need for parking — applicant had adduced no evidence entitling it to any or all of the fifty-percent waiver. Although the trial court denied the motion on the ground that applicant had presented "some evidence, however limited, in support of its position that the proposal meets § 10.1.19" it cautioned that applicant had "not present[ed] evidence on the characteristics of parking demanded by affordable housing units, or the projected use of alternate transportation modes by residents of downtown housing units, or whether any of the other parking available in the area is effectively available to the project due to unique use times or shared use." The court thus ruled that the final decision on whether applicant's evidence was "sufficient for approval of the extent of [the] parking waiver that it seeks" would "have to await the close of all the evidence, including any rebuttal evidence." No substantial additional evidence on shared-use parking in the adjacent parking structure was forthcoming.

¶ 6. In their proposed findings and conclusions, the parties restated their respective positions on the parking-waiver issue; applicant proposed that it had demonstrated that the parking regulation is unnecessarily stringent for reasons of shared or dual use and the availability and projected use of alternate transportation modes, while neighbors submitted that applicant had failed to meet its burden of showing that it was entitled to the waiver on these or other grounds. In its final decision, the court found that applicant had "not demonstrated that the requested waiver of all fifty of the parking spaces required for the residential use is warranted[;] although evidence may exist to support such a waiver, it was not presented to the Court." More specifically, the court found that applicant had not adduced adequate evidence on the likely use of public transit and had "presented no evidence to support the shared or dual use of any of the parking spaces,

either in the proposed garage or in the existing garage." The court did find, however, that evidence relating to vehicle ownership patterns in the downtown area of Burlington indicated an ownership level of 1.4 rather than the presumed 2 vehicles per unit, which entitled applicant to a waiver of thirty parking spaces.

¶ 7. The court thereupon granted a waiver of thirty of the fifty spaces requested "without prejudice" to applicant's submitting a new application to the Board for either a waiver of the remaining twenty spaces or a proposal to create additional parking spaces. "Any such waiver request," the court went on, "would have to be supported by appropriate evidence regarding the projected use of alternate transportation, the shared or dual use of any of the available spaces in either the existing or the proposed garages, . . . or any proposed vehicle limitation covenants or restrictions." A final judgment order was entered, and the case was closed.

¶ 8. Neighbors thereupon appealed the decision to this Court and applicant, as authorized by the trial court, submitted an "amendment" to the Board seeking to obtain the balance of the fifty-space waiver that it had originally applied for. Applicant's submission to the Board explained that, in response to the Environmental Court's ruling, it was "request[ing] an additional 20 vehicle parking waiver from the [Board] based on the following information." Applicant then stated that it would provide parking on a fee-paying basis for up to fifty spaces in the adjacent College Street parking garage to be available for use between 5:30 p.m. and 7:00 a.m. plus weekends and holidays. Each purchaser would be provided with a "wand" programmed to allow entry during these hours so as not to conflict with commercial tenants. In addition, applicant stated that it would add a provision to the Declaration and Bylaws of the residents' association limiting the allowable number of vehicles per unit. Applicant included several citations to studies of shared-use parking purporting to demonstrate its feasibility.

¶ 9. The Board issued its decision in August 2006. In a candid statement accompanying the decision, the Board explained that it had "struggled with the unusual procedural circumstances presented by this application." As the Board observed, it "was essentially being asked by the Environmental Court to reconsider on remand the parking waiver issue where the Board had previously issued positive findings *on an essentially identical*

*parking waiver request.*" (Emphasis added.) Although uncertain whether it was therefore being asked by the court to re-evaluate the issue under "some higher standard" of proof, the Board went on to reaffirm its earlier decision that applicant was entitled to the requested waiver under the shared-use criterion, and granted the application. The Environmental Court affirmed, rejecting neighbors' claim (raised in a pretrial motion) that the shared-use issue was res judicata and finding that applicant had changed the proposal to provide for parking-management practices and a parking covenant. Neighbors then filed this second appeal, which we have consolidated with the first for purposes of review.

■ ■ ¶ 10. Although the two appeals together raise a number of claims, we address the parking issue first because it is dispositive. Neighbors contend that applicant was barred from relitigating the shared-use parking issue once it had fully and fairly, if unsuccessfully, litigated the issue in the first proceeding. The governing principles are well settled. As we have explained, "[a]lthough res judicata does not apply to administrative proceedings as an inflexible rule of law, the principles of res judicata and collateral estoppel generally apply in zoning cases as in other areas of the law." *In re Carrier*, 155 Vt. 152, 157-58, 582 A.2d 110, 113 (1990) (citation omitted). Under the so-called "successive-application" doctrine, the general rule is that a zoning board or planning commission may not entertain a second application concerning the same property after a previous application has been considered "unless a substantial change of conditions ha[s] occurred or other considerations materially affecting the merits of the request have intervened between the first and second application." *Id.* at 158, 582 A.2d at 113 (quotation omitted); accord *In re Jolley Assocs.*, 2006 VT 132, ¶ 12, 181 Vt. 190, 915 A.2d 282; see generally 4 E. Ziegler, Rathkopf's The Law of Zoning and Planning § 68:3, at 68-7 (4th ed. 2005) ("Absent any material change in plans or conditions, a board cannot change its mind on a subsequent application for substantially the same relief. Its prior decision is res judicata of the merits of the later application."). Under this rule we have held that a local planning agency or court may consider a second application which has been substantially changed to respond to objections to the first. *In re Carrier*, 155 Vt. at 158, 582 A.2d at 113.

■ ¶ 11. As we recently explained, the successive-application doctrine represents "an attempt to balance the competing con-

cerns of flexibility and finality in zoning decisions." *In re Dunkin Donuts S.P. Approval*, 2008 VT 139, ¶ 9, 185 Vt. 583, 969 A.2d 683 (mem.). Flexibility is required because "zoning decisions must be responsive to changing circumstances" while the interest in finality must be equally served to protect property owners from the "harassment" of repetitive applications. *Id.* (quotations omitted); see 3 E. Ziegler, *supra*, § 39:13, at 39-17 (explaining that rules prohibiting successive applications serve "to prevent unnecessary waste of the local legislature's time, repetitive stirring up of public sentiment, and unfair burdens on . . . opponents which successive applications regarding the same property will produce").

¶ 12. Although the trial court here concluded otherwise, we are in essential agreement with the Board that it was confronted in the amended application with "an essentially *identical parking waiver request.*" (Emphasis added.) The initial application sought a parking waiver based in part on shared-use of the adjacent commercial parking garage during the evening and early morning hours. The issue was fully litigated, and the court concluded that the evidence failed to show that the plan was feasible. As the court itself acknowledged, the purported remand was designed solely to allow applicant to submit additional "appropriate evidence" on this exact same issue.

¶ 13. Furthermore, as applicant's expert readily acknowledged, the evidence adduced in the second proceeding — consisting of a more specific plan to offer and enforce shared-use parking on a fee-paying basis in the adjacent commercial parking structure — was just as available in the first proceeding. Relitigation of an issue with additional evidence that was previously available, as occurred here, is precisely what res judicata and collateral estoppel are intended to prevent. See generally 18 J. Moore, et al., Moore's Federal Practice § 132.02[2][d], at 132-25 to 132-26 (2009) ("A party may be precluded from relitigating an issue if evidence supporting the party's position on the issue could have been submitted in previous litigation but, for whatever reason, was not properly raised."). Characterizing the additional evidence as effecting a material change in the application, as applicant here suggests and the trial court found, is unpersuasive. Applicant's original proposal sought to satisfy the parking-waiver requirement in part through shared use of the adjacent commercial parking structure, and its amended proposal sought to satisfy the parking-waiver requirement in part through shared use of the

adjacent commercial parking structure. The proposed solutions to the parking problem were identical. The submission of additional evidence addressing its workability does not change the theoretical solution of using shared day and nighttime parking to make spaces available.

¶ 14. Nor does requiring the submission of such evidence in the first instance place unreasonable constraints on zoning applicants or the planning process; rather, by encouraging applicants to be thorough in their initial applications it serves the interests of economy and finality by preserving judicial resources and protecting adjoining landowners from repetitive litigation. See *Northwestern Lehigh Sch. Dist. v. Commonwealth*, 578 A.2d 614, 615-16 (Pa. Commw. Ct. 1990) (where the first application to condemn property was denied for lack of evidence demonstrating absence of "reasonable alternative," a second application based on a new "study of alternative sites" did not represent a material change, and the "failure to present evidence which could have been presented in the earlier proceeding was not a basis for an exception to the doctrine of res judicata").

¶ 15. While a trial court may certainly choose to keep a proceeding open for some limited period of time to allow the submission of additional evidence, that is not what occurred here. Instead, as noted, the trial court conditionally approved the project "without prejudice" to applicant's reapplying for the parking waiver, entered judgment, and declared the case closed. As we explained in *In re Jolley Assocs.*, 2006 VT 132, ¶ 12, an Environmental Court ruling that purports to be "without prejudice" represents "no more than an expression of the successive application doctrine and confers no greater right to reapply than is allowed by that doctrine." The trial court here concluded that the evidence failed to support applicant's request for a shared-use parking waiver. That issue having been decided against applicant, the court violated the successive-application doctrine in relitigating the issue absent any material change in circumstances apart from the submission of supporting evidence which could have been adduced in the first proceeding. Accordingly, we conclude that the judgment granting the second application must be reversed. Our

conclusion renders it unnecessary to address neighbors' remaining claims on appeal.[*]

*Reversed.*

---

[*] Applicant remains free to submit a new and materially different application that attempts to meet the parking requirements by, for example, reducing the number of proposed residential units, increasing the size of the proposed parking garage, or some other proposal. Given the uncertainty of the ultimate outcome of the process, however, we see no clear necessity to address the remaining issues raised by neighbors on appeal, and therefore decline to do so.