STATE OF VERMONT

SUPERIOR COURT                           ENVIRONMENTAL DIVISION

                                         }
In re Fenoff Accessory Dwelling Application }      Docket No. 196-9-08 Vtec
In re Fenoff Variance Amendment          }         Docket No. 32-2-10 Vtec
                                         }
                                         }

### Decision and Order on Town's Motion for Summary Judgment

In Docket No. 196-9-08 Vtec, Appellant-Applicants Charles R. Fenoff, Jr. and Kathy Fenoff (Applicants) appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Westmore, denying their most recent application to install an accessory apartment in an accessory building on the same property as their residence. In Docket No. 32-2-10 Vtec, Applicants appealed from a decision of the ZBA denying their request for an amendment to the conditions of a variance granted by the ZBA in 2006. Applicants are represented by Charles D. Hickey, Esq.; and the Town is represented by John H. Klesch, Esq. Interested party Aline B. Harter has entered an appearance in both cases representing herself, but has not taken an active role on the present motion.

The Town has moved for summary judgment asking the Court to deny Applicant's application for an accessory apartment on the basis that there are no grounds for amending the restrictive conditions of the 2006 variance that allowed construction of the accessory building. The following facts are undisputed unless otherwise noted.[1]

---

[1] Other than the present cases, the following cases involving this property and these parties have been filed in this Court. See In re: Fenoff Accessory Dwelling Application, No. 280-12-06 Vtec; In re: Appeal of Fenoff, 199-9-05 Vtec; In re: Appeal of Fenoff, 9-1-05 Vtec.

1

Factual and Procedural History

Applicants own property at the address of 104 Stoney Brook Lane, in the Town of Westmore. The property is located between Stoney Brook Lane and Stoney Brook (also known as Doring Brook), a year-round stream. The property is a long, narrow corner lot that also has frontage at its westerly end on Vermont Route 5A. The property was originally composed of three undersized lots, which continue to be referred to in the ZBA decision in this matter as Lots 6, 7, and 8 of a prior subdivision, although they have long since been deemed to have merged into an approximately 0.95-acre lot. See In re: Fenoff Accessory Dwelling Application, No. 280-12-06 Vtec, slip op. at 2 (Vt. Envtl. Ct. Mar 19, 2008) (Wright, J.); In re: Variance Request by Charles and Kathy Fenoff, Findings of Fact and Decision, at 2, Conclusions ¶ 3 ((Town of Westmore ZBA, August 30, 2005). The lot complies with the minimum required lot size of 40,000 square feet. 2000 Zoning Bylaw § 204, Table 201.[2]

Due to the course of the brook, the property is only approximately thirty feet wide at its narrowest point. The northerly end of the property contains an existing house (the house), connected to an existing mound-type wastewater system to the north of the house. The southerly end of the property contains the accessory building at issue in the present appeal, at an elevation approximately 18 feet below that of the house. The accessory building is used as a garage and storage building under the terms of a variance issued by the ZBA in April of 2006.

In September of 2004, Applicants applied for a zoning permit for construction of the accessory building, described in the application as a 28′ x 36′ wood building

_____

[2] Two versions of the Zoning Bylaw were applicable to the various iterations of Applicants' project, one adopted in 2000 and another adopted in 2006. Unless otherwise specifically stated, as here, references to the Zoning Bylaw refer to the 2006 Zoning Bylaw.

on a concrete slab, with a separate in-ground wastewater system to serve the accessory building. The building was proposed for use as a garage downstairs and an apartment dwelling unit upstairs.

Applicants proceeded to construct the building before they had received a ruling on their application from the Zoning Administrator. The application had been denied on September 28, 2004, but had not then been communicated in writing to Applicants. The accessory building is located 24¼ feet from the Stoney Brook Lane right-of-way, and is located from 24½ to 43 feet from the brook. The wastewater system was constructed within 100 feet of the high water level of the brook. The Zoning Administrator issued a Notice of Violation on October 22, 2004, which Applicants appealed to the ZBA.

The ZBA upheld the Notice of Violation in December 2004 for failure of the accessory building to comply with the required setbacks from the road and the brook.[3] The decision noted that the building was within the setbacks for both the right-of-way and the brook, but did not state any problems regarding the separate septic system proposed to serve the apartment, or that septic system's setback from the brook.[4] No enforcement case was brought against Applicants, based on the Notice of Violation, for having constructed the building without first having obtained a zoning permit. Applicants appealed the ZBA's decision on the Notice of Violation to this Court in Docket No. 9-1-05 Vtec.

---

[3] The required setbacks from the road and from the brook are identical in both the 2000 and 2006 Zoning Bylaws, but are stated in differently-numbered sections. Those required setbacks are 25 feet from the road right-of-way, 2006 Zoning Bylaw § 204, Table 201; 2000 Zoning Bylaw § 204, Table 201 (regarding shoreline lots); and 50 feet from the mean water line of the brook. 2006 Zoning Bylaw § 316.1(A)(b); 2000 Zoning Bylaw § 315.1(A)(2).

[4] The required setback for subsurface wastewater systems of 100 feet from the brook, as well as other required characteristics of septic systems in relation to the brook, are found in 2006 Zoning Bylaw § 316.3; 2000 Zoning Bylaw § 315.3.

That appeal was placed on inactive status to allow Applicants to apply for a variance from the setback requirements for the proposed building as a garage and accessory dwelling unit. The ZBA denied the variance application on August 30, 2005, on the basis that the building was located so close to the public right-of-way as to constitute a detriment to the public welfare. Variance Request by Charles and Kathy Fenoff, Findings of Fact and Decision, at 2, Conclusions ¶ 7 (August 30, 2005). Applicants appealed the ZBA's denial of the 2005 variance to this Court in Docket No. 199-9-05 Vtec. Based on newly-discovered information about the width of the Stoney Brook Lane right-of-way, both the variance appeal (No. 199-9-05 Vtec) and the zoning permit appeal (No. 9-1-05 Vtec) were later remanded to the ZBA.

On April 7, 2006, the ZBA granted a variance for the as-built construction of the accessory building. However, the ZBA granted the variance for the accessory building only as a garage/storage building, imposing conditions that the structure was to be used solely as a garage/storage building, that it could not be used for living quarters, that it was not to be served by a water supply or toilet facilities, and that the as-built wastewater disposal system was to be disconnected and the septic tank removed. By conditioning the grant of the variance on the use of the building only as a garage and for storage, and by requiring the septic tank to be removed, the ZBA effectively denied the variance for the accessory dwelling unit, for the following reason:

> The ZBA concludes that the wastewater system constructed in . . . 2004 . . . is not in conformance with Section 315.3 of the Westmore Zoning Bylaw in that it is less than 100 feet from the high water level of Doring Brook also known as Stoney Brook. For this reason, the ZBA concludes that an accessory dwelling unit requiring water and sewer disposal systems should not be permitted on Lot #8.

In re: Variance Request by Charles and Kathy Fenoff, Findings of Fact and Decision, at 2, Conclusions ¶ 5 (Town of Westmore ZBA April 7, 2006) (2006 Variance

4

Decision).

In the 2006 Variance Decision, the ZBA thus denied the dwelling unit in the accessory building solely for the reason that the separate wastewater disposal system serving it was too close to the brook. The 2006 Variance Decision was not appealed and became final. 24 V.S.A. § 4472(d).[5] Applicants subsequently disconnected and removed the wastewater system that had been installed to serve the accessory building.

Since September 1, 2005, the state zoning enabling statute has required towns to allow accessory dwelling units within or appurtenant to owner-occupied, single-family dwellings, as long as the property has sufficient wastewater capacity, the accessory dwelling unit does not exceed 30 percent of the total habitable area of the single family dwelling, and the applicable setback, coverage, and parking requirements in the town bylaws are met. 2003, No. 115 (Adj. Sess.), § 95; 24 V.S.A. § 4412(1)(E). That statute also specifically allows municipalities to be less restrictive of such accessory dwelling units than the state statute, and to require conditional use review for accessory dwelling units in certain circumstances. 24 V.S.A. § 4412(1)(F).[6]

The Town's Zoning Bylaw was amended, effective June 27, 2006, to provide for such accessory dwelling units. Section 319.1 allows the Zoning Administrator to approve an accessory dwelling unit that is appurtenant to an owner-occupied

---

[5] The present application seeks to amend the conditions of the 2006 Variance Decision to allow the proposed dwelling unit to be installed in the accessory building, proposing to connect it to the existing wastewater system already serving the house on the northerly portion of the property.

[6] Effective July 1, 2004, the state zoning enabling statute also added authorization, codified at 24 V.S.A. § 4414(8), for towns to adopt bylaws allowing waivers to reduce dimensional requirements under certain circumstances; no such waiver provisions have been adopted by the Town.

single-family dwelling as a permitted use. Section 319.1, requires that the property have sufficient wastewater capacity, that the unit not exceed 30 percent of the living area in the single family dwelling, and that all setback, coverage, and parking requirements in the Zoning Bylaw be satisfied. However, if such an accessory dwelling unit involves "[c]onversion of an existing structure which does not meet the setback requirements of these bylaws," it must receive conditional use approval from the ZBA. Zoning Bylaw § 319.2(4). Similarly, if a new structure is proposed for such an accessory dwelling unit, conditional use approval is required. Id., § 319.2(1).

In August of 2006, Applicants applied under these new provisions to install the upstairs apartment in the accessory building as an accessory dwelling unit. They applied for it as a permitted use under § 319.1, but recognized that the application might instead require conditional use approval under § 319.2. The August 2006 application proposed a new mound-type wastewater system to be located closer than 25 feet to Stoney Brook Road. The ZBA denied this application in November of 2006 because the mound septic system failed to meet the required setback from the road for a structure, as well as because the building failed to meet the required setbacks from the road and from the brook.

In its decision, the ZBA specifically stated that the 2006 Variance allowing the as-built construction of the building had only authorized the storage and garage use of the building, which it characterized as a "less intense use" than the requested accessory dwelling unit. Applicants appealed the November 2006 ZBA decision to this Court in Docket No. 280-12-06 Vtec. The Court issued a decision on summary judgment in that appeal, as to whether a mound-type wastewater system was a "structure" subject to the setback requirements of the ordinance.[7]

---

[7] That decision was later vacated and the appeal dismissed by agreement of the

On June 2, 2008, Applicants applied for conditional use approval of the proposed accessory dwelling unit in the accessory building, this time proposing to connect the apartment to the existing waste disposal system serving the existing house on the property. The current proposal does not propose any septic tank or wastewater disposal field (either underground or mound-type) near the accessory building. Rather, it proposes an underground sewer pump station near the accessory building to pump the wastewater generated by the apartment upgradient to the existing septic tank at the house, from which it would be pumped, together with the wastewater generated by the house, by an existing pump station to the existing mound system northerly of the house.

On August 20, 2008, the ZBA denied the application under the successive application doctrine, stating that the changes proposed in the current application were not substantial enough to distinguish it from the application which had been the subject of the 2006 Variance Decision. Although it declined to reach the merits of the application, the ZBA went on to analyze the application under § 319 of the Zoning Bylaw, treating it as an application for a new accessory structure under § 319.2(1) rather than under § 319.2(4) as conversion of an existing structure which does not meet the setback requirements of the Zoning Bylaw. Under the conditional use criteria of § 203.1, the ZBA concluded that there would be no undue adverse impact under four of the five conditional use criteria, but that it would not meet § 203.1(D) because the accessory building does not meet the applicable setbacks. Applicants appealed the ZBA's August 2008 decision to this Court, which ruled on summary judgment that, while the scope of that appeal included the merits of their application as well as whether the application differed sufficiently from the previous ones to be considered, the Court could not consider the merits of the application

parties on January 16, 2009.

until and unless the ZBA (or this Court in a <u>de</u> <u>novo</u> appeal) had amended the conditions of the 2006 Variance that preclude the use of the structure as a dwelling unit. <u>In re Fenoff Accessory Dwelling Unit</u>, No. 196-9-08 Vtec (Vt. Envtl. Ct. Sept. 3, 2009) (Wright, J.). The conditional use application in Docket No. 196-8-08 Vtec was then placed on inactive status pending Applicants' application to the ZBA to amend the conditions of the 2006 Variance Decision.

On October 26, 2009 Applicants filed the present application, requesting the ZBA to amend the conditions of the 2006 Variance to eliminate conditions 1, 2, and 3 prohibiting the use of the building for living quarters served by a water supply. The ZBA denied the amendment under the <u>Stowe Club Highlands</u> doctrine, made applicable to municipal land use permits by <u>In re Hildebrand</u>, 2007 VT 5, ¶ 7, 181 Vt. 568, on the basis that none of the three types of changes warranting amendment of a land use permit is present in this instance. The ZBA's denial of the amendment is the subject of Docket No. 32-2-10 Vtec.

<u>Motion for Summary Judgment</u>

The Town has moved for summary judgment that there are no grounds for amending the restrictive conditions of the 2006 Variance Decision. A grant of "summary judgment is appropriate when, giving the benefit of all reasonable doubts and inferences to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." <u>Gade v. Chittenden Solid Waste Dist.</u>, 2009 VT 107, ¶ 7 (citing <u>Mooney v. Town of Stowe</u>, 2008 VT 19, ¶ 5, 183 Vt. 600 (mem.); V.R.C.P. 56(c)).

Both parties' arguments have to some extent conflated the analysis appropriate to whether an applicant who is <u>granted</u> a final permit may apply to amend its conditions, with the analysis appropriate to whether an applicant who is <u>denied</u> a permit may file a successive application. Both analyses are founded in the

8

principles favoring finality in municipal land use decisions, but allowing flexibility in appropriate circumstances. Hildebrand, 2007 VT 5, ¶¶ 11, 12 (citing 24 V.S.A. § 4472; In re Dep't of Bldgs. and Gen. Servs., 2003 VT 92, ¶ 21, 176 Vt. 41; In re Nehemiah Associates, Inc. (Nehemiah II), 168 Vt. 288, 294 (1998)).

Once a granted permit becomes final, its conditions may not be challenged, but they may be amended in appropriate circumstances. Hildebrand, 2007 VT 5, ¶¶ 11, 12. In Hildebrand, the Supreme Court approved the use in municipal cases of the standards for such amendments applied under Act 250, as laid out in In re Stowe Club Highlands, 166 Vt. 33 (1996); Nehemiah II, 168 Vt. 288 (1998). Consideration of an amendment application may be justified based on ". . . changes in factual or regulatory circumstances beyond the control of a permittee; . . . changes in the construction or operation of the permittee's project, not reasonably foreseeable at the time the permit was issued; or . . . changes in technology." Hildebrand, 2007 VT 5, ¶ 7 (citing Stowe Club Highlands, 166 Vt. at 38). Even if one of these types of changes is present, an amendment may nevertheless not be justified, for example, if the change "was reasonably foreseeable at the time of permit application." Hildebrand, 2007 VT 5, ¶ 7 (citing Nehemiah II, 168 Vt. at 294).

Similarly, if a municipal land use permit application is denied, an applicant may only submit a successive application if some "substantial change of conditions [has] occurred or other considerations materially affecting the merits of the request" have occurred after the denial, such as if "the application has been substantially changed so as to respond to objections raised [to] the original application" or if the applicant proposes to comply with additional conditions or limitations that the municipal panel or court "is empowered to impose." In re Jolley Associates, 2006 VT 132, ¶ 12, 181 Vt. 190 (citing In re Application of Carrier, 155 Vt. 152, 158-59 (1990) (decided under prior law)); In re Armitage, 2006 VT 113, ¶ 8, 181 Vt. 241. A substantial change in conditions can also occur due to "a change in the physical

surroundings of the property, or a change in the governing regulations." In re: R.L. Vallee PUD, No. 100-5-07, slip op. at 4 (Vt. Envtl. Ct. Aug. 17, 2007) (Wright, J.) (internal citations omitted). This doctrine allows the land use process to be flexible enough when reviewing subsequent land use applications for the same parcel to accommodate changes in circumstances while respecting the finality of prior decisions. See In re McGrew, 2009 VT 44, ¶ 11, 186 Vt. 37 (citing In re Dunkin Donuts S.P. Approval, 2008 VT 139, ¶ 9, 185 Vt. 583).

A successive application must be a significant change that directly addresses all of the negative findings in the previous decision. Armitage, 2006 VT 113, ¶¶ 9, 10 (consideration of successive application foreclosed because applicants failed to modify proposal to address concerns about traffic flow that were part of the basis for the rejection of the prior application); compare In re Roderiques Variance Application, 212-9-08 Vtec, slip op. at 8 (Vt. Envtl. Ct. Apr. 27, 2010) (Durkin, J.) (successive application allowed because it realigned proposed accessory structure to minimize the side yard variances that had been the basis of the prior application's rejection). The change must be more than merely the presentation of additional evidence in support of the proposal contained in the original application. See McGrew, 2009 VT 44, ¶ 13, 186 Vt. 37.

With respect to whether Applicants are entitled to have their successive application for approval of an accessory dwelling unit in the accessory building considered on its merits, this Court's September 3, 2009 decision in Fenoff Accessory Dwelling Unit, No. 196-9-08 Vtec, slip op. at 5–6, determined that the merits of the successive application may be presented to the Court, for two reasons. First, the Zoning Bylaw applicable to accessory dwelling units was amended after the 2006 Variance Decision, and now allow applications such as this one to apply for conditional use approval. Second, the current application addresses the only reason for which the 2006 Variance was denied for the accessory dwelling unit—that the

septic system serving the accessory apartment was located too close to the brook—by proposing to connect the accessory apartment instead to the wastewater system serving the house. The merits of whether the current application meets the requirements of § 319 and the standards for conditional use approval remain for trial in this matter.

The present motion focuses on whether circumstances have changed sufficiently to allow the ZBA, and hence this Court in this <u>de</u> <u>novo</u> appeal, to consider amending the conditions of the 2006 Variance granted for the as-built accessory building.[8]

The <u>Stowe Club Highlands</u> test requires the Court to assess whether, since the 2006 Variance was issued, there have been any changes in factual or regulatory circumstances beyond Applicants' control. Although there have not been any changes in the factual circumstances of the property or of the adjacent roadways or brook since the April 7, 2006 Variance Decision, there was an important change in the regulatory circumstances applicable to this property. Effective after that decision, on June 27, 2006, the Town adopted a change in its Zoning Bylaw not only allowing an accessory dwelling unit to be located in or adjacent to a single family dwelling as a permitted use if the building meets all the setback and other dimensional requirements of the Zoning Bylaw, § 319.1, but also allowing for conditional use approval of accessory apartments in existing buildings that do not comply with setback requirements, and for conditional use approval of accessory apartments in new buildings. § 319.2(1), (4).

---

[8] Of the three considerations in the <u>Stowe Club Highlands</u> test, as applied to municipal land use decisions by <u>Hildebrand</u>, Applicants have presented no evidence or arguments that any change in technology is the basis for their application to amend the conditions of the 2006 Variance. Accordingly, summary judgment must be granted to the Town, dismissing Question 3 of the Statement of Questions in Docket No. 32-2-10 Vtec.

The Town argues that the new regulation was not meant to allow accessory apartments in existing structures nonconforming as to setbacks if the structure had been allowed by variance rather than simply predating the setback regulations. However, the language of the new regulation is not so limited. Rather, the plain language of § 319.2(4) allows Applicants to apply for conditional use approval of the accessory apartment. This is a regulatory change from the situation that existed at the time of the 2006 Variance Decision, sufficient to allow Applicants to apply to amend the conditions imposed in that variance.

The Town argues that, had the new regulation allowing conditional use approval of an accessory apartment in a new building existed at the time of the 2006 Variance Decision, it would not have changed the limitations imposed in the Variance Decision, because the accessory building itself did not meet the required setbacks for a building. However, the 2006 Variance Decision allowed the building despite its failure to meet the setbacks; it was only the accessory apartment that was denied, and that denial was based only on the failure of the proposed septic system for the apartment not meeting its required setbacks.

The Town also argues that the change to the Zoning Bylaw is insufficient to justify an amendment of the 2006 Variance because the 2006 Variance was wrongly issued, that is, the Town argues that the accessory structure was not eligible for a variance, as it was not necessary to enable a reasonable use of the property as a whole, which already contained a residence. However, even if it was erroneously granted, the 2006 Variance has long since become final without appeal, and its validity can no longer be challenged. 24 V.S.A. § 4472(d); City of South Burlington v. Department of Corrections, 171 Vt. 587, 588-89 (2000) (determining that 24 V.S.A. § 4472(d) prevents any sort of collateral attack on a zoning decision that has not been properly appealed). As such, all that is at issue in the present case is whether its conditions 1, 2, and 3 should be amended or deleted.

12

The Town suggests that allowing the proposed amendment to the 2006 Variance would violate 24 V.S.A. § 4469(a)(5), because the amended variance would no longer represent "the least deviation possible from the zoning regulations." However, that is a factual issue for the merits of the proposed amendment. All that is at issue in the present motion is whether the Court should reach the merits of Applicants' application to amend the 2006 Variance.

The Stowe Club Highlands test also requires the Court to assess whether, since the 2006 Variance was issued, there have been any changes in the construction or operation of Applicants' project not reasonably foreseeable at the time the variance was granted that allowed the accessory building but denied the accessory apartment in that building.

As discussed above and in the September 3, 2009 Decision and Order in Docket No. 196-9-08 Vtec, in the context of municipal zoning permits, an applicant may submit a successive application if it addresses the reasons for which the initial application was denied. See Armitage, 2006 VT 113, ¶ 4; see also 24 V.S.A. § 4470(a). The change in the sewage system for the proposed accessory apartment connecting it to the existing wastewater disposal system for the existing house on the property is a change in Applicant's project that was not reasonably foreseeable at the time of the application for the 2006 Variance. Not until Applicant's proposal had been twice denied, as proposed with two different separate wastewater disposal systems, was the proposal developed to connect the accessory apartment instead to the wastewater system serving the house.

The requirement articulated under Stowe Club Highlands that the change not be reasonably foreseeable referred in that case to whether it was reasonably foreseeable that minor changes to a major development might result from contractual or financial constraints requiring part of the project to be modified slightly, downsized or eliminated. See Stowe Club Highlands, 166 Vt. at 39. If the

13

submission of revised zoning applications to address the reason why a previous application was denied is considered as always being foreseeable under this test, applicants would never be able to have a successive application considered. It is unreasonable to expect applicants to foresee that an application submitted in good faith will be denied by the ZBA, so as to require them to anticipate and address the reasons for that denial, prior to the ZBA's decision. Rather, applicants are allowed to redesign their projects after a denial to try to remedy the problems that resulted in the denial, as recognized by the continued development of the successive application doctrine since Stowe Club Highlands was decided. See e.g. Armitage, 2006 VT 113; Jolley Associates, 2006 VT 132; Hildebrand, 2007 VT 5; McGrew, 2009 VT 44.

In the present case, the current proposal connects the proposed accessory dwelling unit to the pre-existing wastewater system already serving the existing house. This change to the design eliminates the separate wastewater system that was too close to the brook in the 2006 proposal, which was the reason for which the 2006 Variance was denied for the apartment although it was granted for the accessory building. The current proposal also eliminates an alternative mound system that was too close to the road, addressing the reason for which the August 2006 proposal was denied. The present application is Applicants' second effort to address the reasons for which the ZBA imposed the conditions in the 2006 Variance prohibiting the accessory building's use as a dwelling unit.

Both because there was a change in regulatory circumstances beyond the control of Applicants since the issuance of the 2006 Variance, and because there was a change in the proposed construction of the project not reasonably foreseeable at the time the 2006 Variance was granted, the ZBA, and hence this Court, may consider the merits of Applicants' proposed amendment to the 2006 Variance Decision.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that in Docket No. 32-2-10 Vtec summary judgment is GRANTED in Part to the Town, dismissing Question 3 of the Statement of Questions; and is GRANTED in Part to Applicants, in that circumstances have changed sufficiently for the ZBA, and hence this Court, to consider the merits of Applicants' application to amend the conditions of the 2006 Variance. In Docket No. 32-2-10 Vtec, summary judgment is otherwise DENIED in that material facts remain in dispute for trial as to the merits of the variance amendment. Similarly, in Docket No. 196-9-08 Vtec, as determined in the Court's September 3, 2009 Decision on summary judgment, material facts remain for trial as to the merits of the conditional use application for the accessory apartment, under § 319 and the conditional use standards in the Zoning Bylaw, including whether the proposal falls under § 319.2(1) or § 319.2(4).

The parties should be prepared to discuss in the scheduled telephone conference (see enclosed notice) the length of time needed for trial of the merits of the conditional use application and the variance amendment.

Done at Berlin, Vermont, this 27th day of December, 2010.

_____

Merideth Wright
Environmental Judge

15